JOEL WRIGHT, PLAINTIFF IN ERROR, v. SCHUYLER H. MATTISON.

A statute of the State of Illinois, passed in 1839, declared: "That hereafter every person in the actual possession of land or tenements under claim and color of title made in good faith, and who shall, for seven successive years after the passage of this act, continue in such possession, and shall, also, during said time, pay all taxes legally assessed on such land or tenements, shall be held and adjudged to be the legal owner of said land or tenements, to the extent and according to the purport of his or her paper title."

What constitutes color of title, explained.

What is color of title is matter of law, and when the facts exhibiting the title are shown, the court will determine whether they amount to color of title.

But good faith in the party, in claiming under such color, is a question of fact for the jury.

Hence, where the court decided that the color of title was not made in good faith, such decision was erroneous. It should have been left to the jury.

An act of 1835, upon the same subject, passed by the State of Illinois, also examined and explained.

THIS case was brought up by writ of error from the circuit court of the United States for the district of Illinois.

The case is stated in the opinion of the court.

It was argued by *Mr. Browning*, for the plaintiff in error, and *Mr. Williams*, for the defendant in error.

*Mr. Browning* said that he felt some embarrassment in consequence of the decision of this court in Moore v. Brown, 11 How. 434; but he thought that a different construction had since been given to the statute by the supreme court of Illinois, in Irving v. Brownell, 11 Illinois, 402, 414. These cases were then discussed.

Wright also claimed under an auditor's deed in 1833, which was within the protection of the act of 1835, and which would have furnished a sufficient defence, if he had been in possession

for seven years. Whether he was so or not, was a question of fact for the jury. But the court withdrew it from them. Wright had clearly had possession of one and a half acres, and yet the court decided that he was entitled to the protection of the stat-ute of 1835, or that of 1839.

*Mr. Browning* then contended that Wright was within the act of 1839, holding under claim and color of title made in good faith, and cited Cro. Jac. 122; 9 Watts, 73; 5 Barr, 300; 3 Serg. & Rawle, 298; 6 Barr, 325; 8 ibid. 506; 7 S. & R. 173; 2 Caines, 183; 4 Johns. 202; 9 Cow. 557; 4 Paige, 199; 6 Johns. 47; 16 ibid. 299; 18 ibid. 44, 360; 13 ibid. 119; 3 Conn. 246, 402; 4 Georgia, 115; 4 Hayw. 185; 5 ibid. 288; 5 Pet. 402; 11 ibid. 41; 10 ibid. 442; 8 ibid. 244, 253.

*Mr. Browning* then commented on Irving *v.* Brownell, admitting that the court said in that case that the words, " claim and color of title made in good faith," in the statute of 1839, meant title of higher character and superior dignity to that intended by the words, " connected title in law or equity, deducible of record," in the statute of 1835. But he contended that this *dictum* was virtually overruled by Davis *v.* Easley et al. 13 Illinois, 192, 199; and then cited cases to show that the title of Wright was acquired in good faith. 16 Johns. 299; 8 Pet. 253; 9 Cow. 558.

*Mr. Williams* contended that the acts of 1835 and 1839 require occupancy under a title *primâ facie* good; the first-named act requiring residence on the land, and the other the payment of taxes, and that the claim of title be made in good faith. It is not denied that this construction is according to the fair import of the terms of these acts, nor that it is the settled construction of the Kentucky limitation law, from which the terms, " a connected title in law or equity, deducible of record," &c., are copied, as well as of similar acts in Kentucky, Louisiana, and Tennessee. Moore *v.* Brown et al. 11 How. 424; Skyle's Heirs *v.* King's Heirs, 2 A. K. Marsh. 387; Frique *v.* Hopkins et al. 4 Martin, N. S. 224; Barlow *v.* Bill, 4 Bibb, 106; Clay *v.* Miller, ibid. 461; Young *v.* Murray, 3 A. K. Marsh. 58; Powell *v.* Harrison, 2 Pet. 241; Walker *v.* Turner, 5 ibid. 668; Poage's Heirs *v.* Chinn's Heirs, 4 Dana, 50.

He then argued to show that the following consequences did not result from his construction of the laws, as was contended for by the opposite counsel:—

1. That it renders the acts altogether inoperative.

2. That it was obviously the intention of the legislature to protect the possession of a person purchasing upon the faith of conveyances made by the officers of the State who were authorized to sell and convey lands.

3. That these acts were intended to protect actual settlers and cultivators, whose titles were liable to exception, against speculators having better titles.

Mr. Justice DANIEL delivered the opinion of the court.

The questions determined by the circuit court, whose decision we are called on to review, arose upon the construction of two statutes of the State of Illinois, which limit the right of action against the possessors of lands, held by purchasers in virtue of sales and conveyances under the authority of the State, for the non-payment of taxes.

The provisions of the statutes in question are as follow :—

January 17, 1835. Sect. 1. " That, hereafter, no person who now has, or hereafter may have, any right of entry into any lands of which any person may be possessed by actual residence thereon, having a connected title in law or equity, deducible of record from this State or the United States, or from any public officer authorized by the laws of the State to sell such lands for the non-payment of taxes, or from any sheriff, marshal, or other person authorized to sell such lands on execution, or under any order, judgment, or decree of any court of record, shall make any entry therein except within seven years from the time of such possession being taken ; but when the possessor shall acquire such title after taking such possession, the limitation shall begin to run from the time of acquiring title."

By the statute of 1839 it is enacted, " That, hereafter, every person in the actual possession of lands or tenements, under claim and color of title made in good faith, and who shall, for seven successive years after the passage of this act, continue in such possession, and shall also during the said time pay all the taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise, or descent, before said seven years shall have expired, and shall continue such possession, and continue to pay the taxes as aforesaid, so as to complete the possession and payment of the taxes for the term aforesaid, shall be entitled to the benefit of this section."

In this case in the circuit court, which was an action of ejectment, the plaintiff's lessee, the defendant in error here, exhibited in proof a release from the widow of the patentee from the United States, of the premises in question; also deeds of conveyance from the heirs of the patentee, with the exception of one of those heirs, who was a minor, and whose estate or interest in the premises there seems to have been no attempt to transfer.

The lessee of the plaintiff further proved the possession of the premises by the defendant at the commencement of the action on the 15th of July, 1851.

The defendant, to maintain the issue on his part, offered to read in evidence to the jury a deed of the 20th of December, 1823, from the auditor of public accounts of the State of Illinois, to Nathaniel Wright and Joel Wright, for the land in controversy, reciting the public sale of those lands by the auditor, in pursuance of the several acts of the general assembly of the State, and of the act entitled, "An act for levying and collecting a tax on land and other property, approved February 18, 1823," and the bidding off the said lands to Nathaniel Wright and Joel Wright, as the best bidders, for the sum of eleven dollars and six cents, being the tax and costs due thereon for the years 1821 and 1822.

In connection with the aforegoing deed from the auditor, the defendant offered to read in evidence to the jury a deed, properly executed and recorded, from the said Nathaniel Wright to the defendant, Joel Wright, for the northeast quarter of section thirty-four, (the premises claimed;) and offered further to prove to the jury, that the said defendant had been in the actual possession of the premises for more than seven years next preceding the commencement of this suit, and had paid all the taxes assessed thereupon; and the defendant stated by his counsel, that the purpose of offering the evidence was to secure to the defendant the benefit and protection of the seven years' limitation laws of 1835 and 1839.

To the introduction of this evidence by the defendant, the plaintiff objected, assigning for his objection, the following causes:—

1. That the defendant had neither proved, nor offered to prove, that the requisitions of the revenue law of 1823 had been complied with, prior to the sale of said land for taxes as stated in the auditor's deed, and that the deed was not *primâ facie* evidence of these facts.

2. That said deed was void upon its face.

The court excluded the evidence thus tendered by the defendant, who excepted to the opinion of the court.

The defendant next offered in evidence a deed from the auditor of public accounts to the defendant, dated on the 10th day of January, 1833, in which it is stated, that in conformity with all the requisitions of the several laws in such cases made and provided, the auditor had, on the 11th day of January, 1831, exposed to sale a certain tract of land, being the northeast quarter of section thirty-four, in township seven north, in range four east of the fourth principal meridian, for the sum of

one dollar and eighty-two cents, being the amount of the tax for the year 1830, with the interest and costs chargeable on the said lands; and that the said Joel Wright had offered to pay the aforesaid sum for the whole of the said land; and the said Wright having paid the said sum into the treasury of the State, the auditor thereby granted and conveyed to the said Wright the whole of the northeast quarter of section thirty-four as above described, (being the land in controversy,) subject to the right of redemption, as provided by law.

This last-mentioned deed from the auditor was admitted in evidence without objection, and as well as the former deed from the auditor to Nathaniel and Joel Wright, bearing date on the 20th of December, 1823, was shown to have been regularly recorded in the proper recording office.

By a statement of facts agreed between the counsel, it was in proof on the trial, that Joel Wright, claiming that he and his brother, Nathaniel, were owners and tenants in common in fee-simple of the land in controversy, took possession of it in 1829, by inclosing and putting under actual cultivation a portion thereof, and that, from time to time, he had extended his inclosures, until, in 1841, he had all the said quarter section under actual cultivation, with the exception of about twenty acres; and that, from the date last mentioned forward, he had continued in actual possession and cultivation of the said land; and had paid all the taxes assessed upon the said land from the year 1840 to 1851, inclusive of both years, and that the land was of the value of more than three thousand dollars.

The evidence having been closed on the part of the plaintiff, and on that of the defendant, the plaintiff moved the court for the following instructions to the jury, namely:—

"That the deed offered in evidence by the defendant, of the 10th of January, 1833, from the auditor to the defendant, is of itself such a title as will protect a party in the possession of land under the act of 1839, provided it is made in good faith, and connected with the payment of taxes for seven successive years, and a continued possession for that time; but if the jury believe from the evidence that the defendant was in possession of the land in controversy, claiming to be the owner in fee, in the year 1829, and so continued to remain in possession until the year 1833, then he could acquire no title by permitting the land to be sold for taxes, and becoming the purchaser thereof in 1831; and the auditor's deed to the defendant on the sale of 1831 for the taxes of 1830, given in evidence by the defendant, conveys no title, and is not a title obtained in good faith; and such a deed, if obtained in the manner aforesaid, is not such a

title as brings his possession within the protection of the limitation acts of 1835 and 1839.

This last instruction having been given as prayed by the plaintiff, was excepted to by the defendant.

After the closing of the testimony, there were on the part of the defendant, five several instructions prayed of the court. Of these, the first two having been granted, and no exception to them having been reserved, they are therefore not properly subjects for comment here.

The third one of these instructions being deemed unimportant, under the view which we take of this cause, will be dismissed without particular remark.

The 5th instruction prayed for by the defendant below, the materiality of which will hereafter be shown, was in the following words, namely : " That the questions whether the deed given in evidence was made in good faith, and whether the defendant has occupied the said land under said deed in good faith, are questions of fact which must be decided by the jury upon consideration of all the facts and circumstances given in evidence upon the trial in this cause." This fifth instruction the court refused to grant, except with the following qualification, namely : " That this, as a general proposition, is true, but as a matter of law, the court charges the jury, that any man who is in possession of land, claiming to be the owner thereof, and who permits the land to be sold for the non-payment of taxes, and who himself becomes the purchaser, and acquires a deed under such purchase, such title cannot be said within the meaning of the law, to be made in good faith."

To the above refusal and qualification by the court, the defendant in the ejectment excepted.

From the sketch which has been given of the proceedings in this cause in the circuit court, it is shown that the defendant did not found his title either exclusively or principally upon the provisions of the statute of 1835, but relied in defence of that title, and of his possession, equally, if not chiefly, upon the statute of 1839, and the acts of the auditor performed in the execution and under the authority of the latter law. And it is in viewing this cause as controlled by the provisions of the statute of 1839, that we regard it as entirely disembarrassed of any doubt or perplexity, which might surround an attempt to rest its decision upon a construction of the law of 1835. Hence we have dismissed from our consideration the several questions discussed and ruled in the circuit court, with reference to the law of 1835, as being irrelevant to the points regularly involved in this cause, which depend essentially upon the statute of Illinois of 1839.

By the 1st section of this statute, as we have already seen, it
is declared: " That hereafter every person in the actual posses-
sion of land or tenements under claim and color of title made
in good faith, and who shall for seven successive years after the
passage of this act continue in such possession, and shall also
during said time pay all taxes legally assessed on such land or
tenements, shall be held and adjudged to be the legal owner of
said land or tenements, to the extent and according to the pur-
port of his or her paper title."

There exists no controversy in this case as to the facts, that
the defendant in the ejectment proved the actual possession by
him of the land, and the payment of all the taxes assessed there-
on, for seven successive years previously to the institution of this
suit. The proof of these facts by the defendant, therefore, left
open under the 1st section of the statute of 1839 the single in-
quiry, whether it was shown or attempted to be shown by him
that he held under claim and color of title made in good faith.

We deem it unnecessary to examine in detail, the numerous
decisions adduced in the argument for the plaintiff in error, to
define and establish the meaning of the phrase, " color of title."
The courts have concurred, it is believed, without an exception,
in defining " color of title " to be that which in appearance is
title, but which in reality is no title. They have equally con-
curred in attaching no exclusive or peculiar character or impor-
tance to the ground of the invalidity of an apparent or colorable
title; the inquiry with them has been, whether there was an ap-
parent or colorable title, under which an entry or a claim has been
made in good faith.

We refer to a few decisions by this court which are deemed
conclusive to the point, that a claim to property, under a convey-
ance, however inadequate to carry the true title to such property,
and however incompetent might have been the power of the
grantor in such conveyance to pass a title to the subject thereof,
yet a claim asserted under the provisions of such a deed is
strictly a claim under color of title, and one which will draw to
the possession of the grantee the protection of the statutes of
limitation, other requisites of those statutes being complied with.
We will lastly, upon this point, refer to a recent decision of the
supreme court of the State of Illinois, which not less for its in-
trinsic strength than on account of the circumstance that it is an
interpretation by the highest judicial authority of the State, of
the peculiar local legislation of that State, is entitled to special
attention and respect.

In the case of Gregg v. The Lessee of Sayre and wife, 8
Pet. 253, 254, in which the question was raised as to the
effect of a deed impeached either for fraud in the grantor, or

want of estate in him coextensive with the terms of the instrument, this court say: " It is not necessary to decide whether these conveyances were fraudulently made by Ormsby, (the grantor,) or not. The important point is to know whether Gregg and wife (the grantees) had knowledge of the fraud if committed, or participated in it. This knowledge the circuit court charged the jury was immaterial, as the fraud of Ormsby rendered the deeds void, and consequently they could give no color of title to an adverse possession. This construction is clearly erroneous. If Ormsby be justly chargeable with fraud, yet if Gregg and wife did not participate in it; if, when they received their deeds, they had no knowledge of it, there can be no doubt that the deeds do give color of title under the statute of limitations. Upon their face the deeds purport to convey a title in fee; and having been accepted in good faith by Gregg and wife, they show the nature and extent of their claim to the premises."

The case of Ewing *v.* Burnett, 11 Pet. 41, was one in which plaintiff and defendant claimed under conveyances from the same grantor. The grantee in the junior deed relied upon his title as being protected by proof of adverse possession for the time of limitation. The introduction of this deed was objected to, because, as it was alleged, the defendant had notice of the claim of the grantee in the elder conveyance. To an objection thus urged to the introduction of the junior deed, this court said, that there were two answers: first, that the jury might have negatived the proof of such notice; secondly, though there was such notice of a prior deed as would make a subsequent one inoperative to pass a title, yet an adverse possession for twenty-one years, under claim and color of title merely void, is a bar."

. So late as the year 1851, in the case of Pillow *v.* Roberts, in the 13th of Howard, 472, speaking of the protection extended by statutes of limitation to a possession held under claim of color of title, this court say, " statutes of limitation would be but of little use if they protected those only who could otherwise show an indefeasible title to the land. Hence color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims adversely to all the world." And again, in the same case, it is said, in order to entitle the defendant to set up the bar of the statute after five years adverse possession, he had only to show that he and those under whom he claimed held under a deed from a collector of the revenue of lands sold for the non-payment of taxes; he was not bound to show that all the prerequisites of the law had been complied with in order to make the deed a valid and indefeasible conveyance of the title. If the court should require such proof before the defendant could have the benefit of this law, it would

require him to show that he had no need of the protection of the statute before he could be entitled to it. Such a construction would annul the statute altogether, which was evidently intended to save the defendant from the difficulty after such a length of time, of showing the validity of his tax title.

The case of Woodward v. Blanchard, decided by the supreme court of Illinois within a few months past, was like the case at present under review—an action of ejectment against a purchaser of land sold for the non-payment of taxes.

The defendant in the ejectment, relied for the maintenance and protection of his title and possession, upon the statute of Illinois of 1839, already quoted; professing to hold under claim and color of title as expressed in that statute, all the other requirements of the law being fulfilled. The defence thus alleged, superinduced necessarily a construction of the statute as to the signification of the phrase, "claim or color of title made in good faith," and in their interpretation the court institute a comparison between its provisions and those of the statute of 1835, and point out the distinctive features of each. With respect to the law of 1839, they say: "There is in this act not only a change in the facts, but an evident intention to dispense with part of the requirements of the former act, and to relax the strictness required in others. Possession is retained in one case, but residence is dispensed with; connection in the chain to be deduced of record, and its deduction from specified sources, are dispensed with; in place of these, claim and color of title made in good faith, with the payment of taxes, are substituted as to lands in possession. But, as to another class of lands, (vacant and unoccupied,) possession and claim are both dispensed with, and the party is only required to show color of title in good faith." Further on, the court say: "We are therefore, under this defence, not driven to the springs or sources of the title, to inquire if they be pure, nor to the successive channels through which it may pass, for the purpose of removing obstructions to or difficulties in its course and transmission. But we come at once to the party defendant, to inquire if he had a claim and color of title with his possession, at the beginning of this period; if they were made in good faith, and his possession continued and was accompanied by the payment of taxes for seven successive years." What say the court is claim? The act of taking possession, if otherwise unexplained, will be referable to the paper title, and understood as making claim under it. Color of title may be made through conveyances, or bonds, or contracts, or bare possession under parol agreements.

Nor is it at all important, whether the title be weak or strong; for color of title is acquired to establish an adverse possession

for the operation of the statute, which commences by disseisin of the rightful owner with a claim of the land. But our statute requires this color of title to be accompanied by a written evidence, " a paper title," and an act or motion of the mind. It must be in good faith. Defects in the title may not be urged against it as destroying color, but, at the same time, might have an important and legitimate influence in showing a want of confidence and good faith in the mind of the vendee, if they were known to him, and he believed the title therefore to be fraudulent and void. What is color of title is matter of law, and when the facts exhibiting the title are shown, the court will determine whether they amount to color of title. But good faith in the party in claiming under such color, is purely a question of fact, to be found and settled as other facts in the cause. We can entertain no doubt in this case that the auditor's deed to the purchaser at the tax sale is color of title in Woodward, in the true intent and meaning of the statute, and without regard to its intrinsic worth as a title. " Good faith," (say the court,) " is doubtless used here in its popular sense, as the actual existing state of the mind, whether so from ignorance, skepticism, sophistry, delusion or imbecility, and without regard to what it should be from given legal standards of law or reason."

We have quoted at some length from the opinion of the supreme court of Illinois, both on account of the clearness and accuracy of its reasoning, and on account of the respect which is due to it, as an interpretation of a statute of the State by her supreme judicial authority. We entirely approve of the exposition of the supreme court of Illinois, in its opinion of what constitutes color of title, upon well-established general principles, and within the scope and meaning of the statute of 1839, and in relation to the nature of the question of what constituted good faith in the possessor of such colorable title, and also as to the manner in which that question should be determined, namely : as a question of fact determinable by the jury, and not by the court.

But the court in the case before us withdrew from the jury, and assumed upon itself the right of deciding upon the motives and intention of the defendant in the ejectment; and it was with the view, doubtless, of exercising this function, that the qualification to the fifth prayer of the defendant was added by the court, and that the court had previously at the instance of the plaintiff, instructed the jury, that although the deed of the 10th of January, 1833, from the auditor to the defendant, was of itself, such a title as would protect the party in possession under the act of 1839, connected with payment of taxes, and continued possession for the period of limitation, yet, if the

defendant being in possession of the land in controversy, had permitted it to be sold for taxes, and had himself become the purchaser thereof, the deed of the auditor in pursuance of such sale, could convey no title to the defendant, and was not a title obtained in good faith. The accuracy or inaccuracy of the legal positions taken by the court in this instruction, we deem it not necessary at present to determine.

We hold, that in assuming to decide upon the question of good faith on the part of the defendant, the court exerted an authority not legitimately belonging to it; a power exclusively appertaining to the jury. We further hold, that it was error in the court to decide as it did upon the prayer of the plaintiff in the ejectment, and by its qualification annexed to the fifth prayer of the defendant, that the deed from the auditor of the 10th of January, 1833, was not such an instrument as could be adduced in evidence under the statute of 1839, in order to show color of title. We are therefore of the opinion that the decision of the circuit court be reversed, and that this cause be remanded to that court, with directions to order a *venire facias de novo* for the trial thereof, in conformity with the law as herein expounded.