BELL v. COOK et al.

(Circuit Court, E. D. Oklahoma. October 28, 1911.)

No. 1,488.

*(Syllabus by the Court.)*

1. INDIANS (§ 3*)—ALLOTMENTS—AUTHORITY OF CONGRESS.

The state of Oklahoma, by the terms of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267), under which it was admitted, expressly consented that the federal government should reserve to itself and exercise its power of regulation and control over the disposition of allotted lands of members of the Five Civilized Tribes, to the exclusion of the power possessed by the state over the property and persons of its other citizens.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. INDIANS (§ 15*)—ALLOTMENTS—FEMALE MINORS.**

The marriage of a female Creek citizen enrolled on the freedman roll did not confer on her the power to alienate her allotment so long as she remained less than 18 years of age according to the rolls, the statute of the state conferring such power of alienation having no application to such allottee under the enabling act (Act June 16, 1906, c. 3335, 34, Stat. 267) and Act Cong. May 27, 1908 (Act May 27, 1908, c. 199, 35 Stat. 312). Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755, followed.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*]

**3. INDIANS (§ 15*)—ALLOTMENTS—RIGHT TO ALIENATE.**

Congress did not intend by section 3 of the act approved May 27, 1908 (Act May 27, 1908, c. 199, 35 Stat. 313), to make that which was black white, or the reverse, nor did it undertake to overthrow the multiplication table, neither of which things could it do, nor did it attempt. But what Congress intended to accomplish, and did accomplish, by declaring the "enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of such citizen or freedman," was to require resort to the rolls and records as a fixed and definite public record from which alone it can be ascertained whether an allottee does, or does not, possess the qualified age or requisite degree of Indian blood to enable him to alienate his lands.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*]

**4. CHAMPERTY AND MAINTENANCE (§ 7*)—VALIDITY OF CONVEYANCE.**

H., a female, was enrolled by the Commission to the Five Civilized Tribes on the freedman roll of Creek citizens as of six years of age at the date of enrollment therein specified as September, 1898. After her marriage, and on July 28, 1908, she executed a deed attempting to convey her allotment to C., who was in possession under a deed executed January, 1908, C. Remained in actual possession under this last deed, and was occupying the land adversely on September 1, 1910, when H. executed a deed to B.

*Held*, that H., being married at the time she executed the deed to C. on July 28, 1908, was resting under one disability—that being minority as fixed by the rolls—and such deed amounted to color of title in C.

*Held*, further, that, C. being in adverse possession under said color of title on September 1, 1910, the deed from H. to B. was champertous and void against C., the party in possession.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 54–110; Dec. Dig. § 7.*]

**5. ENROLLMENT OF INDIAN.**

The enrollment records of the Commissioner to the Five Civilized Tribes recited that H., a female, was enrolled as of September, 1898, and her age is therein given as six years. Whether it shall be held that her minority ended the first or last day of September, 1910, is not decided.

At Law. Action in the nature of ejectment by Sarah R. Bell against I. C. Cook and W. A. Cook, her husband. Trial without jury. Judgment in part for plaintiff, and in part for defendants.

W. W. Noffsinger, Geo. S. Ramsey, and C. L. Thomas, for plaintiff. L. J. Roach, C. M. Bradley, and Preston C. West, for defendants.

POLLOCK, District Judge. This is an action in the nature of ejectment brought by the plaintiff to recover from defendants the possession of a tract of land described in the petition, as follows:

"All of the southwest quarter of the northwest quarter, and the southeast quarter of the northwest quarter, and lots five (5) and six (6) section

two (2) township nineteen (19) north, range thirteen (13) east, and lot five (5) section twenty-nine (29), township eighteen (18) north, range thirteen (13) east, containing one hundred and fifty-eight and ninety-four hundredths acres, more or less."

The petition is in that brief and general form permitted by the Code of the state. The defendants are husband and wife. By their answer they deny the title and right to possession asserted by plaintiff, admit their possession, assert ownership of a portion of the land by virtue of certain conveyances made to defendant I. L. Cook, and title and possession of the entire tract by defendant W. A. Cook. To this answer a reply was filed, and on issues so joined the case came on for trial on its merits before the court and a jury. Thereupon it was stipulated and agreed by the parties in writing to waive a trial by jury as to all matters in issue save alone the single fact of the age of one Melinda Higgs, née Davis; and, this question being determined by the jury, it was discharged, and the case was submitted for determination to the court on the evidence, briefs, and arguments of counsel, and comes now on for decision.

The facts necessary to an understanding of the questions presented for decision may be summarized, as follows:

On the 13th day of October, 1902, there was by the duly accredited representatives of the government made, executed, and delivered to one Melinda Davis, a freedwoman, member of the Creek Tribe of Indians, theretofore duly enrolled as such, a deed conveying to her as a homestead the S. E. ¼ of the N. W. ¼ of section 2, township 19 N., of range 13 E., of the Indian Meridian, containing 40 acres. And on the same day, by the same authority, there was by deed of allotment conveyed to her the remainder of the tract described in the petition of the plaintiff, to wit, the S. W. ¼ of the N. W. ¼ and lots 5 and 6 of section 2, township 19, and lot 5 of section 29, township 18, all north of range 13 E., of the Indian Meridian, containing 118.94 acres, more or less. Theretofore said Melinda Davis had been duly enrolled and entered on the Creek freedman rolls prepared and made by authority of the government, a public record, under No. 3,862, as of six years of age at the date of enrollment, which was therein specified as September, 1898. At a date left uncertain by the evidence, but before the making and delivery of any conveyance by her to the property in dispute in this action, or any part thereof, said Melinda Davis intermarried with one Albert Higgs. Thereafter, said Melinda Higgs, née Davis (hereafter for sake of brevity referred to as the "allottee"), sold a portion of the land in controversy to defendant I. L. Cook, and on the 17th day of January, 1908, and again on February 5, 1908, she and her husband made, executed, and delivered deeds containing covenants of general warranty purporting to convey to defendant I. L. Cook a portion of the lands theretofore allotted and conveyed to her; that is to say, lots 5 and 6 and the S. W. ¼ of the N. W. ¼ of section 2, township 19 N., of range 13 E., of Indian Meridian. Thereafter, and on the 28th day of July, 1908, said allottee and her husband made, executed, and delivered another deed of general warranty to defendant I. L. Cook, purporting to convey

the same lands described in the above conveyances, and also the homestead of allottee, to wit, the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 2, township 19 N., of range 13 E., of Indian Meridian, state of Oklahoma. Each of the above-mentioned deeds were duly filed for record in the appropriate office on the day next succeeding their execution and delivery and were there duly recorded. Following the making of said conveyances, defendants took possession of all that portion of the lands therein described and thereafter were in the actual, open, notorious adverse possession of the same claiming to be the owners thereof in fee. On September 1, 1910, said allottee and her husband made, executed, and delivered to plaintiff herein, Sarah R. Bell, a deed of general warranty purporting to convey all the lands theretofore conveyed to defendant I. L. Cook, and, as well, lot 5, section 29, township 18 N., range 13 E., of the Indian Meridian. However, theretofore, and on the 3d day of August, 1910, there was filed in the county court of Tulsa county, Okl., the appropriate tribunal having jurisdiction over matters of probate in the county wherein the land was situate, the petition of one David Shipman praying the appointment of a guardian for the said allottee, therein alleged to be a widow, to conserve and care for her estate. Thereafter, and on the 6th day of August, 1910, said David Shipman was by order of said court duly appointed guardian of the person and estate of said allottee, a minor, who thereafter duly qualified as such guardian. On the same day said guardian was appointed he filed in the court his petition praying for an order directing the sale of all that portion of the lands allotted to his ward described in the conveyances made by her to defendant herein I. L. Cook. Thereafter, and on the 6th day of September, 1910, an order was duly entered upon notice in said court directing the sale of said lands as prayed by the guardian. Thereafter, and on the 17th day of September, 1910, a sale of said lands was made by the guardian to defendant herein W. A. Cook, and said sale was by the court confirmed September 27, 1910, and on the same day a guardian's deed was executed and delivered to the purchaser. Said conveyance was on the same day duly filed for record and recorded in the appropriate office.

In response to interrogatories submitted, the jury found by special verdict the allottee, Melinda Higgs, née Davis, was born January 29, 1892, and was 18 years of age January 29, 1910.

From the foregoing statement of facts it is apparent as between the parties to this action there is no controversy over lot 5, section 29, township 18 N., of range 13 E., of Indian Meridian. Defendants have no claim of title thereto by virtue of any conveyance shown in the record. The plaintiff has. Therefore, as defendants by their joint answer in paragraph 5 allege W. A. Cook to be the owner and in possession of all the lands described in the complaint as to said tract, plaintiff is entitled to judgment, unless it appears the conveyance to her was of no validity whatever; hence said tract may be and is dropped from the present consideration of the case.

Coming now to the remainder of the land which comprises both the homestead and other lands conveyed to the allottee, it may be ob-

served. This being an action at law in the nature of ejectment, plaintiff must recover, if at all, on the strength of her superior legal title to the property. This she asserts by virtue of the conveyance to her made by the allottee of date September 1, 1910. In response to this assertion of legal title in the plaintiff, defendants contend, as follows: (1) That prior to said date the allottee and her husband had conveyed to defendant I. L. Cook all her interest therein by virtue of the conveyances of date of January 17, February 5, and July 28, 1908. Therefore it is contended no title passed to plaintiff by her subsequently acquired conveyance. (2) That at the date of the conveyance by the allottee and her husband to plaintiff the person and estate of the allottee were in the lawful custody of the county court of Tulsa county, Okl., under control of her guardian theretofore lawfully appointed at a time when she was a minor. Therefore it is contended said allottee under guardianship was without power to sell and convey her estate in her own person and right. (3) That at the date of the conveyance to plaintiff defendants in good faith were in the actual possession of the real property now in controversy claiming as owner by virtue of prior conveyances duly recorded. Therefore it is contended the act of plaintiff out of possession in pretending to purchase and receive conveyance of said lands was champertous and void under the statutes of Oklahoma as theretofore construed by the Supreme Court of the state. On all of said grounds defendants contend the plaintiff by reason of the conveyance to her has not shown such legal right to the property in controversy as will warrant a recovery in this action.

Again, as to the strength of their own title, defendants contend the conveyance made to defendant I. L. Cook by the allottee and her husband, bearing date July 28, 1908, was made at a time when all governmental restrictions on her right to convey her allotted lands, whether homestead or otherwise, had been removed by act of Congress of May 27, 1908; the contention of defendants being the said act in express terms removed restrictions theretofore existing against the alienation of lands allotted to the members of the Five Civilized Tribes, as follows: (a) From all lands of intermarried whites without regard to age; (b) from all lands of freedmen, without regard to age; (c) from all lands of mixed bloods of less than half Indian blood, without regard to age; (d) from the surplus lands of mixed blood Indians having half or more than half and less than three-fourths Indian blood, and to impose restrictions or to retain restrictions theretofore imposed by law until April 26, 1931, upon lands allotted to members of the Five Tribes, as follows: (x) All lands of full blood Indians; (y) all lands of mixed blood Indians having three-fourths or more of Indian blood; (z) the homesteads of mixed blood Indians having half or more than half and less than three-fourths of Indian blood.

It is therefore the insistence of defendants as said act removed all governmental restrictions theretofore existing against the right of the allottee to make said conveyance, and as her right to convey the lands in question was dependent solely and alone on the laws of the state, and as at the time said conveyance was made the allottee was lawfully

married to Albert Higgs, and as the statutory law of the state at the time provided "all male persons of the age of twenty-one years, and all females of the age of eighteen years, and all persons who have legally married of whatever age, and all corporations to the extent authorized by law, may take title to, hold, mortgage, convey, or make any contract relating to real estate or any interest therein," it therefore follows said conveyance was sufficient to pass the legal title to defendant I. L. Cook.

In considering this case, it is thought a part at least of the difficult questions presented on the record may be eliminated from consideration by reference to the provisions of Act Cong. May 27, 1908, c. 199, 35 Stat. 312, and by a consideration of the effect of that act on the rights of the parties hereto. The act provides, in part, as follows:

"Section 1. That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed blood Indians having less than half Indian blood including miners shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act. * * *

"Sec. 2. That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years.

"Sec. 3. That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman.

"Sec. 4. That all lands from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized

Tribes. Provided, that allotted lands shall not be subjected or held liable, to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law.

"Sec. 5. That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void.

"Sec. 6. That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him, to appoint such local representatives within the state of Oklahoma who shall be citizens of that state or now domiciled therein as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of the negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report such matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior. All such reports, either to the Secretary of the Interior or to the proper probate court, shall become public records and subject to the inspection and examination of the public, and the necessary court fees shall be allowed against the estates of said minors. The probate courts may, in their discretion, appoint any such representative of the Secretary of the Interior as guardian or curator for such minors, without fee or charge. And said representatives of the Secretary of the Interior are further authorized, and it is made their duty, to counsel and advise all allottees, adult or minor, having restricted lands of all of their legal rights with reference to their restricted lands, without charge, and to advise them in the preparation of all leases authorized by law to be made, and at the request of any allottee having restricted land he shall, without charge, except the necessary court and recording fees and expenses, if any, in the name of the allottee, take such steps as may be necessary, including the bringing of any suit or suits and the prosecution and appeal thereof, to cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other incumbrance of any kind or character, made or attempted to be made or executed in violation of this act or any other act of Congress, and to take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands. * * * That no restricted lands of living minors shall be sold or encumbered, except by leases authorized by law, by order of the court or otherwise."

[1] In considering the effect of the above act on the rights of the parties, it must be borne in mind under existing treaty regulations made between the government and the Creek Nation the Congress possessed full power and authority to so legislate with respect to lands by the government allotted to its wards; that although the members of the Five Civilized Tribes of Indians by the act of allot-

ment under existing laws became citizens of the state, and the lands thus allotted became a part of that great mass of real estate which on the admission of the Indian Country and Oklahoma Territory as the state of Oklahoma passed under the general control of the laws of the state, yet the state by the terms of the enabling act under which it was admitted expressly consented the general government should reserve to itself and exercise its power of regulation and control over the disposition of such allotted lands to the exclusion of or in conformity with the power possessed by the state over the property of its citizens. .

[2] Coming now to a consideration of the act, it must be conceded from a reading of its separate provisions, having in view the fact that in its first section it was dealing expressly and exclusively with the question as to what restrictions against alienation by allottees should be forever removed, and what should be retained until 1931, in the light of the positive provision of statute law as to the right of a married person to convey, above quoted, the logic of the argument in favor of defendants' position is well nigh unanswerable. However, the act of Congress in question defines the term "minor" as a male under the age of 21 years and a female under the age of 18 years. Theretofore Congress had conferred on the United States Commission to the Five Civilized Tribes power to enroll the members of said tribes for the purpose of ascertaining thereby what persons were entitled to participate in the joint tribal property. And in making up said rolls to inquire and determine among other matters the age, sex, and degree of Indian blood, if any, of such enrolled members, to the end that suitable governmental regulations and restrictions might be thrown around such persons as were found entitled to participate in the division of the tribal property against a waste of their property by inconsiderate and ignorant alienation, and said commission did in compliance with authority thus conferred, among other matters, inquire of, determine, and state on the public rolls by it prepared the age, sex, and degree of Indian blood, if any, possessed by those enrolled thereon. By section 3 of the act of May 27th, above quoted, it is seen that Congress declared the public rolls of citizenship and of freedmen members of the Five Tribes conclusive evidence of the quantum of Indian blood possessed by an enrolled citizen or freedman, and by the enrollment records of the commission the age of any enrolled citizen or freedman to be conclusive of the age of such person in the determination of the right of such person to alienate their allotments. The object, purpose, and intent of Congress by this portion of the act was not by its ipse dixit to make that which was black white, or the reverse, nor was it for the purpose of overthrowing the multiplication table, nor was it enacted for the purpose of putting questions of fact beyond the pale of judicial inquiry. This, of course, it could not do and would not assume to attempt. On the contrary, however, said portion of the act, and the public rolls prepared under authority of Congress as well, were all part and parcel of a general scheme worked out and employed by the government in the allotment of tribal property in severalty to the members of the tribes

and in an endeavor to protect such allottees in their several property rights by such means and to such extent as the exigencies of the case, the ignorance and environment of the allottee considered, was demanded for the best interests of the wards of the government. In carrying out this scheme of protection Congress, as it had the undoubted right to do, defined the word "minor" as it did therein and referred any and all persons intending to become purchasers of any portion of the tribal property from an allottee thereof, not to the uncertain hazard of a judicial inquiry based on the evidence of ignorant, incompetent and interested witnesses, but to the fixed and definite public rolls to ascertain whether such allottee did or did not possess the qualified age or requisite degree of Indian blood to confer on him the power of disposition under the law. If an intending purchaser from an allottee of tribal property holding the public rolls in one hand, and the act in the other, by a comparison of the two found such allottee possessed the power of disposition under the act and the rolls, he was at liberty to purchase and he was protected in such purchase. If, on the contrary, the law and the public rolls considered together denied the right of the allottee to convey, a purchaser from such allottee was not protected, and this regardless of the true state of facts as they might be made to appear in this case.

Viewed in this light, it is clear the allottee, being a minor female freedwoman under 18 years of age at the date of her conveyance to I. L. Cook, was freed from all governmental restrictions against her power of alienation except such disqualifying conditions as were common to all minors under the laws of the state. As has been seen, the statute law of the state above quoted does authorize its female citizens under 18 years of age, lawfully married, to convey their property regardless of the fact of minority, because in contemplation of such law the fact of marriage in and of itself removes this disability of minority; yet, as to such wards of the government, as was the allottee freedwoman in this case, although married, still, as shown by the public rolls, she remained a minor under the act in question. Therefore she could dispose of her property by that method only open under the law of the state to persons of her class, minors, regardless of the fact of her marriage. And, as this method was not pursued in the conveyance by her made to defendant I. L. Cook on July 28, 1908, it must be held insufficient to convey the legal title to the property described and for the reason that the grantor therein, as shown by the public rolls, was a minor under the disabilities of a minor, though married. Therefore said conveyance was ineffectual to pass the legal title of the property to defendant I. L. Cook. As to the effect of a conveyance so made, see Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755.

As to the conveyances between the same parties of dates January 17 and February 5, 1908, it is sufficient to say of them, not only the same disability of minority existed as is above referred to, but at the times the same were made such governmental restrictions against alienation were in force as to preclude a court from giving them any valid effect whatever.

[5] Coming next to the conveyance on which plaintiff relies, as that conveyance was made by the allottee in her own proper person, as of her own right, independent of the aid of a court of probate having jurisdiction over the persons and estates of minors, and as the rolls of the commission on which the age of the allottee is stated to have been six years at the date of her enrollment, and as the act of enrollment is thereon stated to have been as of the month of September, 1898, and as said conveyance was made September 1, 1910, whether in future it shall be by the courts held the disqualifying fact of minority of the grantor ceased on the first day of the month in which she was enrolled or continued to exist until the expiration of that month is a question, which, for reasons hereinafter adverted to, it is deemed unnecessary and improper to here decide. Again, as shown by the record, the property of the allottee here in dispute remained in the grasp of the county court of the county through the appointment of a guardian of the person and estate of the minor allottee on the date of said conveyance, which guardian proceedings had not terminated in any manner on that date by the discharge of the guardian or otherwise, but, on the contrary, thereafter in said proceedings a sale and conveyance of the property of the ward was made to defendant W. A. Cook. However, for reasons hereinafter stated, it is deemed unnecessary to determine the effect, if any, on the right of the allottee to convey in her own name and person to the plaintiff, or the validity of the conveyance made under the order of the court to defendant W. A. Cook, but, on the contrary, it is thought proper to postpone decision of said questions until they shall arise in a case wherein decision is indispensable to an adjudication of the rights of the parties, preferring in this case to place the decision on another ground.

[3] On September 1, 1910, at the date of conveyance on which plaintiff relies, there was in force in the state of Oklahoma the following statutory provision against the purchase of pretended titles, the same being section 2215, Snyder's Statutes, which reads, as follows:

"Every person who buys or sells, or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of a year before such grant, conveyance, sale, promise, or covenant made, is guilty of a misdemeanor."

Prior to September 1, 1910, this provision of the statutory law of the state had been construed by the Supreme Court in the cases of Huston v. Scott, 20 Okl. 142, 94 Pac. 512, and Powers v. Van Dyke, 27 Okl. 27, 111 Pac. 939, and it was therein held a conveyance of land made in contravention of the act, although by the rightful owner, was utterly void as against the person holding adversely claiming to be the owner thereof under color of title. Hence the statute so construed by the Supreme Court of the state at the time of the making of the conveyance to plaintiff in dispute had become a rule of property of the state, and, if applicable to the facts of the case at bar,

is controlling here. That defendants were in possession of the property in dispute, claiming to be the owners thereof in fee by virtue of conveyances theretofore made to defendant I. L. Cook by the allottee, is not open to dispute from the evidence found in the record and the admission of plaintiff. That the conveyance by the allottee to defendant I. L. Cook of date July 28, 1908, was sufficient to give color of title, is apparent from the fact that the sufficiency of said conveyance to pass the legal title to defendant I. L. Cook, forms one of the most doubtful and difficult questions of law presented on this record for decision.

[4] The contention of plaintiff in this regard is not that her acts do not bring her within the prohibition of the statute against buying pretended titles, above quoted, as construed by the Supreme Court of the state, but, on the contrary, is that said act may not be resorted to by defendants to shield them in this case, for that it is argued the act of defendant I. L. Cook in making the ·purchase and taking the conveyances from the allottee under which defendants claim was in violation of positive law, void and insufficient to give color of title. It is therefore urged a court in upholding the act of defendants in so doing would be but permitting them to advantage themselves by their own wrongful and unlawful acts. Whatever may be said of the conveyances of January 17 and February 5, 1908, which were made in the face of governmental restrictions, I cannot assent to this view of the case as applied to the deed of July 28, 1908, for considering the fact that at the date of said deed all governmental restrictions had been by the act of Congress of May 27, 1908, removed except the disqualifying condition of minority of the allottee as expressed in the act, and as shown by the public rolls, and in the further view of the statutory law of the state conferring power of alienation of all those lawfully married, as was the allottee, defendants may well have thought, and doubtless did in good faith believe, said conveyance was valid, binding, and sufficient to pass the legal title to the property therein described. Such conveyance was entirely sufficient to give color of title. Pillow v. Roberts, 13 How. 472, 14 L. Ed. 228; Wright v. Mattison, 18 How. 50, 15 L. Ed. 280; Hall v. Law, 102 U. S. 461, 26 L. Ed. 217. Again, the facts of the case, as gleaned from the evidence, are amply sufficient to bring plaintiff well within the scope and intent of the statutory provision of the state against buying pretended titles, as that act was construed by the highest judicial tribunal of the state prior to the conveyance from the allottee to the plaintiff. It follows, from what has been said, as the sole question of fact reserved by the stipulation of the parties from submission to the court was one not open to judicial inquiry, the findings of the jury thereon will be disregarded as entirely immaterial to the decision of the case.

As defendants have shown no title or right of possession to lot 5, section 29, township 19 N., of range 13 E., of the Indian Meridian, but by their answer deny the title and right of plaintiff to the possession thereof, as to so much of said tract, judgment must enter for

the plaintiff. As to the remainder of the tract, as described in the pleadings in this case, excluding said lot 5, section 29, township 18 N., of range 13 E., judgment will enter for defendants.

The costs of action will be equally divided between the parties. It is so ordered.