KIRBY v. PARKER et al. (UNITED STATES, Intervener).

Civil Action No. 1162.

District Court, E. D. Oklahoma.

Nov. 28, 1944.

J. B. Moore, of Ardmore, Okl., for plaintiff.

W. H. Landram and Francis Stewart, Asst. U. S. Attys., both of Muskogee, Okl., for the defendants and intervener.

RICE, District Judge.

Out of the peculiar facts of this case arise certain legal questions the answers to which are important in fixing stability of titles to inherited Indian lands. Stability of titles to Indian lands is no less important to the Indian than to the white man who seeks to purchase. Instability of titles is harmful to members of the Five Civilized Tribes. It is a known fact that they will sell their lands, but if the title is in doubt the purchaser will not pay their value—yet the Indian will sell. Some few recover their lands—many do not.

The lands involved were a portion of the allotment of Jim Parker, a full-blood enrolled member of the Mississippi Choctaw Tribe of Indians, who died intestate in 1938, leaving three heirs: Aaron Parker, a son, unenrolled, but agreed to be of 7/8ths blood; Floy Parker, a daughter, unenrolled, degree of blood not admitted; and Salina Parker, surviving wife, enrolled as a 1/4th blood Chickasaw Indian. Aaron Parker conveyed his interest to plaintiff by an unapproved warranty deed. The particular lands were selected by the allottee during his lifetime as tax exempt and properly certified as such pursuant to the Act of Congress approved May 10, 1928, 45 Stat. 495.

Sec. 1, Act of Jan. 27, 1933, 47 Stat. 777, provides as follows:

"That all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until April 26, 1956, subject to expenditures in the meantime for the use and benefit of the individual Indians to whom such funds and securities belong, under such rules and regulations as said Secretary may prescribe: Provided, That where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance, devise, gift, or purchase, with restricted funds, by or for *restricted Indians,* such lands shall remain restricted and tax-exempt during the life of and as long as held by such *restricted Indians,* but not longer than April 26, 1956, unless the restrictions are removed in the meantime in the manner provided by law."

The "entire interest" in said lands was not acquired by inheritance by "restricted Indians" if Salina Parker is only a 1/4 blood Indian.

This court construed the above language to mean that if any heir inheriting an interest in such tax exempt lands was less than 1/2 blood the lands did not "remain restricted". Welch v. Weems, No. 243 Civil, this court, decided January 18, 1941.[1] The United States Government was a party to Welch v. Weems and did not appeal. Since then this court has consistently so construed the 1933 Act, and no appeals have been taken.

Recognizing the above construction, the government in this case sought to prove that Salina Parker, although enrolled as a 1/4 blood, is in fact a full blood. The evidence conclusively shows Floy Parker to be more than 1/2 blood—so if Salina Parker may be proved to be 1/2 blood or more, the lands "remained restricted." If the lands remained restricted, the deed from Aaron Parker to plaintiff is invalid, and plaintiff acquired no rights thereunder.

Two Acts of Congress have spoken regarding the conclusiveness of the approved rolls of citizenship of members of the Five Civilized Tribes. Sec. 19 of the Act of

---

[1] No opinion for publication.

April 26, 1906, 34 Stat. 137, 144, provides as follows:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole tribes shall have power to alienate, sell, dispose of, or encumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this Act, unless such restriction shall, prior to the expiration of said period, be removed by Act of Congress; *and for all purposes the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior. * * *"

Section 3 of the Act of May 27, 1908, 35 Stat. 312, 313, provides as follows:

"That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons *to determine questions arising under this Act* and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman. * * *"

The Act of 1908, supra, deals with restrictions upon lands of both full bloods and mixed bloods. Section 1 of the Act provides that certain lands of allottees shall be restricted and that certain other lands shall be unrestricted. Section 9 of said Act provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

Under the provision of Section 9, supra, the conveyance by Aaron Parker, a 7/8 blood Indian, did not require approval by any County Court. If his interest was restricted under Act of 1933, supra, it is sufficient to say that his deed was void. It is not necessary to speculate on how he might execute a valid conveyance.

Is the approved enrollment of Salina Parker controlling as to her quantum of blood? If it is controlling, for the purposes of this suit, she is a 1/4 blood Chickasaw and not a "restricted Indian" within the meaning of the Act of 1933.

The legislation providing for the allotment of the lands of the Five Civilized Tribes required the Commission to the Five Civilized Tribes created by the Act of March 3, 1893, 27 Stat. 645, in charge of that work to make rolls of the citizens or members of each tribe, such rolls to be "descriptive of the persons thereon" and declared that the rolls when approved by the Secretary of the Interior should be "the final rolls of citizenship." See Acts of June 28, 1898, 30 Stat. 495, 503, June 2, 1900, 31 Stat. 250, March 1, 1901, 31 Stat. 861, 867, June 30, 1902, 32 Stat. 500, 501. Such rolls, when approved by the Secretary of the Interior, became the approved rolls and were final. The approved rolls of each tribe shows the name, age, sex, degree of blood, and number of the census card or enrollment card from which the rolls were compiled. The final rolls of the tribe were compiled and printed by the Commission and its successor, the Commissioner, under the name of the Final Rolls of Citizens and Freedmen of the Five Civilized Tribes in the Indian Territory under the authority of the Act of Congress approved April 26, 1906. It was approved by the Secretary of the Interior on or prior to March 4, 1907.

In the performance of its duties in determining who should be enrolled and who should receive an allotment of land, the Commission to the Five Civilized Tribes was a quasi-judicial tribunal. In determining who should be enrolled it was not necessary to determine the degree of blood, although that fact might be deemed descriptive of the person enrolled. It required legislation such as the Acts of 1906 and 1908 to give any judicial or other conclusive effect to such a determination, and this legislation is applicable to an heir as well as to an allottee. United States v. Ferguson, 247 U.S. 175, 38 S.Ct. 434, 62 L.Ed. 1052; Cully v. Mitchell, 10 Cir., 37 F.2d 493; Malone v. Alderdice, 8 Cir., 212 F. 668; Kimberlin v. Commission to Five Civilized Tribes, 8 Cir., 104 F. 653; Nunn v. Hazelrigg, 8 Cir., 216 F. 330, 333; Bell v. Cook, C.C., 192 F. 597; Phillips et al. v. Byrd, 43 Okl. 556, 143 P. 684.

The government now presents to this court the contention that the question for determination does not "arise under" the Act of 1908 and therefore Section 3 of said Act has no application, the contention being that whether or not the land is re-

312

stricted is to be determined under the Act of 1933. This contention entirely disregards Section 19 of the Act of 1906 and also the fact that the Act of 1933 has been and should be considered in its relation to prior Acts of Congress, particularly the Act of 1908. Section 1 of the Act of 1933 does not mention Section 9 of the Act of 1908, but in effect it amends or modifies said section by removing therefrom a particular class of lands. As to that class of lands, the death of the allottee does not remove all restrictions. See Glenn v. Lewis, 10 Cir., 105 F.2d 398.

Since the Acts of 1906 and 1908, Congress has enacted other legislation affecting the Five Civilized Tribes, their lands, and restrictions thereon. See Act of June 14, 1918, 40 Stat. 606, 25 U.S.C.A. §§ 355, 375, Act of April 12, 1926, 44 Stat. 239, Act of May 10, 1928, 45 Stat. 495, and Act of June 20, 1936, 49 Stat. 1542, 25 U.S.C.A. § 412a.

In no subsequent Act has Congress repeated the language of the two prior Acts concerning the conclusiveness of the determination of the quantum of blood of an enrolled Indian. But these subsequent Acts are related to prior Acts. To consider any one without regard to all kindred legislation would result in confusion.

■ In its final analysis, the contention of the government amounts to this: Salina Parker is conclusively presumed to be a ¼ blood Indian as to her allotted lands. She is conclusively presumed to be of ¼ blood as to her inherited lands, provided the lands were inherited prior to the passage of the Act of 1933. United States v. Ferguson, supra. If she had inherited both tax exempt lands and lands not tax exempt after the passage of the 1933 Act, as to the lands not tax exempt she would still be presumed to be of ¼ blood; but the contention is that as to the tax exempt lands there is no presumption as to her degree of blood and she is a full-blood or such other degree of blood as the evidence in a particular lawsuit might show her to be. It does not seem reasonable to conclude that Congress intended such a result.

I think it may be said that the legal profession of what was formerly Indian Territory have, in examining land titles, assumed the rolls to be conclusive as to enrolled Indians, not only as to their allotments of land, but as to inherited lands regardless of the date when the lands were inherited. For the first time in this court the government makes its present contention.

As to unenrolled Indian heirs a different question is presented. It is not necessary in this case to discuss how the degree of blood of an unenrolled Indian is to be determined. A determination that Salina Parker is conclusively presumed to be a ¼ blood is sufficient to resolve the issues in this case in favor of plaintiff.

■ There is need in this case for some discussion as to the jurisdiction of the court. The allegations contained in a petition filed by the plaintiff in the state court failed to disclose any fact that would confer jurisdiction upon the federal court. An Answer filed by the two defendants in the state court made allegations that brought the suit within the purview of Section 3 of the Act of Apr. 12, 1926, 44 Stat. 239, 240, and pursuant to said Act a notice of the pendency of said suit was served upon the Superintendent of the Five Civilized Tribes. In its petition for removal of said cause from the state court the government sought removal under Section 3 of the Act of 1926, and in addition alleged that there was a federal question involved. Whether or not Salina Parker is conclusively presumed in this case to be a ¼ blood Indian clearly presents a federal question, and the cause was properly removed on that ground and this court has jurisdiction. In addition thereto, the allegations of the government in its Petition for Removal, and the allegations of the defendants in their Answer filed in the state court, bring the case within the provision of Section 3 of the Act of 1926. A removal under Section 3 of the Act of 1926 is not necessarily determined under the allegations of a petition filed by the plaintiff in the state court. If that were true the jurisdiction of this court under Section 3 of the said Act could be defeated by the skillful preparation of a petition to be filed in the state court. Although the petition of the plaintiff in the state court may not disclose facts that would warrant a removal under the Act of 1926, if notice of the pendency of said cause is served upon the Superintendent of the Five Civilized Tribes under said Act, and the government files a Petition for Removal in the state court alleging facts that bring the suit within the provisions of the Act of 1926, the cause is properly removed, and being properly removed this court has jurisdiction to hear and finally determine the issues in-

volved. The Act provides that after removal "the cause shall then proceed in the same manner as if it had been originally commenced in said district court, and such court is hereby given jurisdiction to hear and determine said suit * * *."

Although the court in this case has held that the lands involved did not remain restricted under the Act of 1933, still this court, the cause having been properly removed, has jurisdiction to hear and determine all matters involved, and has jurisdiction to order partition of said lands, and it is so ordered.