## MEXICAN GULF OIL CO. et al. v. COMPANIA TRANSCONTINENTAL DE PETROLEO, S. A.

(District Court, S. D. New York. April 11, 1922.)

1. **Action ⊝⊃32—Common-law forms abolished.**

Common-law forms of action have been abolished in New York and one form of civil action substituted in their place, that is, a statement in plain language constituting plaintiff's cause of action. Code Civ. Proc. N. Y. §§ 481, 3339.

2. **Action ⊝⊃17—Cause of action depends on law of place, and remedies on law of forum.**

A plaintiff's cause of action depends upon the law of the place, while his remedies depend upon the law of the forum.

3. **Licenses ⊝⊃51—Mines and minerals ⊝⊃48—Oil rights held incorporeal hereditaments.**

Oil rights involved in a suit to recover damages for taking oil out of part of a lot upon which plaintiffs claim the exclusive right to explore for oil are incorporeal hereditaments, profits à prendre, resting in grant and not in livery and incapable of possession.

4. **Mines and minerals ⊝⊃73—Oil leases are exclusive licenses to enter on property of another.**

Oil leases are really exclusive licenses to the grantees and their assigns to explore for oil, and for that purpose to enter on the premises not adversely, but subject to and consistently with the title and possession of the owner.

5. **Judgment ⊝⊃679—Action between competing licensees under oil leases will not affect claims of grantors.**

Claims inter se of competing licensees under oil leases depend on the titles of their grantors respectively to the land, but the determination of these titles is incidental, and no judgment in an action between the licensees will in any way affect the claims of the grantors to the land inter se.

6. **Mines and minerals ⊝⊃48—Oil and gas belong to no one until brought to the surface.**

Oil and gas are of a fugacious nature, and belong to no one until actually brought to the surface of the ground.

7. **Mines and minerals ⊝⊃81—Lessee takes subject to instruments spread on records.**

Lessee in oil lease took subject to statements in instruments referred to in the lease which were in the line of its title as spread on the public records.

---

⊝⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Lost instruments ☞8(3)—Evidence held to show delivery.**

In an action to recover damages for taking of oil from land, evidence *held* to show that a deed was executed and delivered to the one through' whom plaintiffs claimed.

**9. Lost instruments ☞8(3)—Degree of proof to establish lost deed depends on circumstances.**

The degree of proof to establish a lost deed depends upon the circumstances.

**10. Evidence ☞83(1)—Certificate of justice of peace held to create presumption that deed was executed and witnessed.**

A certificate of a justice of the peace of the state of Vera Cruz, Mexico, notifying the tax office that a, deed had been executed conveying certain land, in order that taxes might be collected on the transfer of ownership, created a presumption that the deed was executed before two known witnesses as required by Civ. Code of Vera Cruz, art. 2761; the deed having' been lost or stolen.

**11. Lost instruments ☞8(3)—Grantees not deprived of rights because unable to name witnesses to lost deed.**

Parties claiming under a deed, consideration for the land conveyed by it not exceeding 200 pesos, could not be deprived of their rights under the deed because unable to state the names of the witnesses, where the deed was lost or stolen, under Civ. Code of Vera Cruz, art. 2761.

**12. Vendor and purchaser ☞233—Record unnecessary in Mexico of deeds of property where consideration less than 200 pesos.**

Civ. Code of Vera Cruz, arts. 3057, 3081, requiring transfers of immovable property to be recorded, did not apply between 1897 and 1920 to transfers of land where the consideration was less than 200 pesos, and an unrecorded deed for land where consideration was less than such amount was good as against all the world, though not recorded, in view of articles 3056, 3058.

**13. Adverse possession ☞105—Adverse holder not affected by knowledge of superior title.**

Generally speaking, an adverse holder of land under a statute of limitation is not affected by knowledge or notice of a superior title.

**14. Vendor and purchaser ☞228(3)—Unrecorded Mexican deed good against party with knowledge.**

An unrecorded deed to land in the state of Vera Cruz, Mexico, was good as against third parties with knowledge of its execution and delivery, under Civ. Code of Vera Cruz, arts. 3057, 3081.

**15. Mines and minerals ☞81—Evidence held to show lessee in oil lease had knowledge of deed of land to person under whom plaintiff claimed.**

Evidence *held* to show that defendant lessee under oil lease in the state of Vera Cruz, Mexico, had knowledge and notice, before the taking of the lease, of plaintiff's claim to the land and of the fraud of lessor who had previously executed a deed of the land to one under whom plaintiff claimed.

**16. Mines and minerals ☞81—Lessee held not entitled to oil as a possessor in good faith.**

In an action to recover damages for taking of oil from land owned by plaintiffs, defendant lessee *held* not entitled to the oil as a possessor in good faith under Civ. Code of Vera Cruz, arts. 809, 817, 818, 819, 821, 843.

**17. Parties ☞88(4)—Misjoinder waived by failure to demur.**

An objection on the ground of misjoinder of parties appearing on the face of the complaint was waived where not taken by demurrer, under Code Civ. Proc. N. Y. § 499.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered ·Digests & Indexes

**18. Parties ☞16—Plaintiff held to have interest in subject of action.**

An oil company, licensee under a lease, was a proper party together with its assignee in an action to recover damages for the taking of oil out of land, where, under the assignment, a royalty was reserved, having an interest in the subject of the action under Code Civ. Proc. N. Y. § 446.

**19. Appeal and error ☞1036(2)—Misjoinder of parties not prejudicial.**

In an action to recover oil taken out of land by defendant, defendant was not prejudiced by misjoinder of parties plaintiff in that one of them had assigned his rights to the other.

**20. Tenancy in common ☞35—No conveyance of share without notice to co-owners.**

Under the law of the state of Vera Cruz, Mexico (Civ. Code, art. 2683), a tenant in common cannot convey his share of the undivided property without giving his co-owners notice so that they can make use of their preferential right to purchase.

**21. Partition ☞4—Land held divided as between co-owners.**

Land held by tenants in common in the state of Vera Cruz, Mexico, was divided as between them by the cutting of brechas through the timber and setting apart, especially where ratified by a notarial division under Civ. Code of Vera Cruz, art. 1526.

**22. Deeds ☞177—Nothing said or done by grantor after conveyance can affect title.**

Nothing that grantors do or say after conveyance to the prejudice of grantee's title can affect it in any way.

**23. Husband and wife ☞267(1)—Husband before civil marriage held to have right to convey without wife joining.**

One who bought land in the state of Vera Cruz, Mexico, after his ecclesiastical marriage, but before a civil marriage, had a right to convey it without his wife joining in the deed, under Civ. Code of Vera Cruz, arts. 1876, 1878, and title 4, art. 43, relating to community property and civil status of persons.

**24. Mines and Minerals ☞81—Action by one lessee to recover from another value of oil illegally taken from land, and not ejectment, held proper remedy.**

An action by one lessee under an oil lease against a lessee under an oil lease executed by a different grantor could be maintained for damages for the value of oil taken out by the defendant, instead of one in ejectment with a claim for mesne profits, as defendant was not in possession under any claim of title to the land, having only a possessio pedis not adverse to, but in strict acknowledgment of, the owner's title; the mere raising of the oil to the surface not constituting a claim of ownership of the land.

**25. Mines and minerals ☞81—Right to explore tantamount to possession of oil.**

The right to explore for oil is tantamount to possession after it is brought to the surface, as affecting form of action to be brought against one taking the oil or interfering with plaintiff's rights.

**26. Action ☞32—Technicalities of common-law forms disregarded under Code.**

The intention of Code Civ. Proc. N. Y. § 3339, providing for only one form for civil action, is that any one who has a right can recover for any infraction of his right without regard to the technicalities which distinguish the forms of actions at common law.

**27. Courts ☞7—Action maintainable in New York for injuries to real estate out of state.**

An action may be maintained in the courts of the state of New York to recover damages for injuries to real estate situate without the state, and an action could be maintained in the courts of the state by one lessee under an oil lease covering land in Mexico against a lessee from a dif-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

ferent grantor to recover damages for interference with plaintiff's incorporeal hereditament or profits à prendre, the action involving the land only incidentally, under Code Civ. Proc. N. Y. § 982-a.

**28. Mines and minerals ☞81—Measure of damages for oil taken from land stated.**

Amount recoverable from one who has taken oil from land which plaintiff had the exclusive right to take is the value of the oil when raised to the surface, and not the increased value in the defendant's hands, when plaintiff is entitled to compensation only.

At Law. Action by the Mexican Gulf Oil Company and the International Petroleum Company against the Compania Transcontinental De Petroleo, S. A. Judgment for plaintiffs.

Parker, Marshall, Miller & Auchincloss, of New York City (R. L. Batts, of Pittsburgh, Pa., G. Carroll Todd, of Washington, D. C., Tom J. Lee, of Tampico, Mexico, H. L. Stone, Jr., of Pittsburgh, Pa., and H. Snowden Marshall, of New York City, of counsel), for plaintiff Mexican Gulf Oil Co.

White & Case, of New York City, for plaintiff International Petroleum Co.

Chester O. Swain, of New York City (Richard V. Lindabury, of Newark, N. J., and Chester O. Swain, of New York City, Carl Kincaid, of Tulsa, Okla., and J. Edward Ashmead, of Newark, N. J., of counsel), for defendant.

WARD, Circuit Judge. This case was tried before me, a jury being waived.

The plaintiffs seek to recover of the defendant damages for taking some 6,000,000 barrels of oil out of a part of lot 163 in the canton of Tuxpam, state of Vera Cruz, Mexico, upon which they claim the exclusive right to explore for oil. The complaint contains two counts, the first, like an action of trover at common law, for the conversion of the oil as their property, and the second, like an action of trespass on the case, for injury to their exclusive right to explore for oil.

The answer of the defendant, after a general denial of all the material allegations of the complaint, pleads seven separate defenses and one partial defense to the first cause of action. The defenses are to the effect that its well was located on a plot of 6.5 hectares (being the most easterly part of the 18.9750 hectares mentioned in the complaint), and that it had obtained the exclusive right to explore for oil on this from Amado Cobos.

The partial defense is that in any event it is entitled to the cost of raising the oil.

I may state at the outset certain considerations to be borne in mind throughout the case:

[1] (a) Common-law forms of action have been abolished in this state and one form of civil action substituted in their place, viz., a statement in plain language of the facts constituting the plaintiff's cause

of action, Code of Civil Proc. §§ 3339 and 481; Backer v. Penn Lubricating Co., 162 Fed. 627, 89 C. C. A. 419.

[2] (b) That a plaintiff's cause of action depends upon the law of the place, while his remedies depend upon the law of the forum. Central Vermont Railway Co. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252.

[3] (c) That the oil rights involved in this case are incorporeal hereditaments, profits à prendre, resting in grant and not in livery and incapable of possession.

[4] (d) That these rights, though commonly called oil leases, are really exclusive licenses to the grantees and their assigns to explore for. oil and for that purpose to enter upon the premises not adversely but subject to and consistently with the title and possession of the owner.

[5] (e) The claims inter se of competing licensees depend upon the titles of their grantors, respectively, to the land; but the determination of these titles is incidental and no judgment in an action between the licensees will in any way affect the claims of the grantors to the land inter se.

[6] (f) That oil and gas are of a fugacious nature and belong to no one until actually brought to the surface of the ground. Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729; Funk v. Haldeman, 53 Pa. 229; Union Petroleum Co. v. Bliven, 72 Pa. 173.

Each party claims under one Amado Cobos, their respective chains of title being as follows:

In the year 1895 the common lands of Chinampa, in the municipality of San Antonio, canton of Tuxpam, state of Vera Cruz, Mexico, were. divided among the co-owners, and lot No. 163 was allotted to Simon Hernandez. In point of fact, Dolores Cruz was entitled to 18.5 hectares as a joint owner with Hernandez, which fact Hernandez subsequently acknowledged by written instrument.

February 20, 1896, Hernandez sold his interest, which, though sup-

posed to contain only 18.5 hectares, really contained 24.7198 hectares, to Cobos. The locus in quo is as follows:

The plaintiffs derive their exclusive oil rights by grant from the heirs of Fermin Cruz, dated August 23, 1912; whereas, the defendant claims the same rights by virtue of a grant from Cobos to the Otontepec Company dated February 28, 1917.

1. The right of the plaintiffs is plainly superior to that of the defendant if they can prove their title, because after conveyance to them there was nothing left in Cobos. But they produce no deed from Cobos because they say some nine years after he had executed and delivered it to Fermin Cruz he borrowed it back with the accompanying title papers for examination by his lawyer in respect to the amount of his holding in lot 163 thereafter fraudulently refusing to return it and denying that he had ever executed it. The mistake seems to have arisen from the supposition of the parties that lot 163 was of the usual standard size of 37.5 hectares; whereas, it was found to contain 43. 3040 hectares, and upon a resurvey some 49 hectares.

Therefore the fundamental question upon which the right of the plaintiffs depends is whether Fermin Cruz had title to the 18.9750 hectares good against Cobos and all persons claiming under him.

They rely upon the following facts to sustain their claim, among others:

April 20, 1901, Martinez, a justice of the peace, notified the tax office at Chinampa, which it was his duty to do, that Cobos had sold to

Fermin Cruz 18.9750 hectares for the sum of 80 pesos and remitted the deed executed before him to the collector of taxes in order that he might collect the tax on transfer of ownership:

"O. 20. I remit to you an 'escritura' of half lot of land consisting of eighteen hectares nine thousand seven hundred fifty square meters which C. Amado Cobos sold to C. Antonio F. Cruz for the sum of $80 eighty pesos, in order that you may collect the corresponding transfer of dominion.
          "Country and Liberty.
"Chinampa, April 20, 1901.                      Apolinar E. Martinez.   [Scroll.]
"C. Collector of Revenue."

The collector of taxes reported that he had collected the tax from Fermin Cruz on 18.9750 hectares of lot 163 valued at 80 pesos to the administrator and comptroller of the revenue office of the canton of Tuxpam, and they in turn reported the fact to the general treasury of the state of Vera Cruz at Jalapa. These facts are proved by official records.

As the justice of the peace did not state that the premises for which he inclosed the deed were in lot 163, the taxing authorities must have learned that fact from the deed itself.

Cobos gave the following receipt to Fermin Cruz:

"I received of Senor Antonio Fermin, a resident of El Chapapote pertaining to this municipality, the sum of $42.00, pesos forty-two, on account for the half lot that I have situated in El Chapapote in common with Senor Dolores Cruz, a resident of the same village, said lot being marked with the number 163 and said half 'Accion' I have agreed to sell to said Senor A. F. Cruz for the sum of $80.00, pesos eighty, there being lacking of this amount $38.00, pesos thirty-eight, which he will deliver to me in full the month of December of the present year and up to such date I will deliver the requisite deed according as the law provides.
"Chinampa, June 9, 1900.                      Amado Cobos.   [Scroll.]"

From 1901 down to 1908 the taxes on the premises were assessed against Fermin Cruz and Dolores Cruz and paid; and in 1909 and 1910 separately against Fermin Cruz and Dolores Cruz, and April 18, 1910, Fermin Cruz died intestate.

In 1909 the following correspondence was had between Cobos and Fermin Cruz:

                                                      "Chinampa, June 30, 1909.
"Senor Antonio Fermin, Chapapote—Esteemed Friend:  The attorney being here, arranging the documents relating to Chapapote and various others I will much appreciate if you will kindly send me by the bearer of the present Atilano Hernandez all the documents relative to the land that I sold you in order to clear up a difference that I have in my documents and as soon as he is through with them I will return them or if it is possible for you to come it will be much better; cautioning you not to fail to come so I won't have the necessity of having recourse to the authorities.
          "Your attentive friend and servant,         Amado Cobos.   [Scroll.]"
                                              "San Antonio, Chinampa, July 2, 1909.
"Senor Don Antonio Fermin, Chapapote—Esteemed Friend:  The lawyer, having examined the documents that cover your land, it resulted that therein appear the hectares of land that according to my documents were lacking; and as they are not registered in the registry office and this is important, I will much appreciate if you will kindly come here for definitely arranging this matter, and if you wish to buy the excess I can sell it to you if it suits you and we reach an agreement as to price, meanwhile the documents remain in

my possession in thirteen lawful leaves like I received them, returning to you another file that does not relate to the case.

"I thank you, and awaiting you, remain,

"Your attentive friend and servant,     Amado Cobos. [Scroll.]"

In 1910 Cobos wrote to Ramon Diaz:

"Chinampa, the 11th of September, 1910.

"Ramon Diaz, Tantima—My Dear Sir and Friend: I acknowledge your favors of the 30th of the past month and 11th of the present.

"Referring to the documents that you ask of me relating to the part that I sold to the now deceased Antonio F. Cruz, they are in the possession of the lawyer on account of there appearing in the primordial title paper some other parcels of mine and of other men and for arranging the one and the other, he said such title paper and the 'escritura' to which you refer were indispensable to him. For such reason I do not comply with your desires. Without more,

"Your servant and friend,     Amado Cobos. [Scroll.]"

It is quite evident that Cobos borrowed the papers from Fermin Cruz to correct the mistake as to the area of lot 163 and claimed for himself, as against Fermin Cruz's title, the excess over 18.9750 hectares, some 5 hectares, which he subsequently located in what is called the "toe of the boot."

April 5, 1911, Cobos in a promise of lease of these 5 hectares to the Continental Mexican Petroleum Company, which was referred to in an instrument of confirmation dated January 30, 1916, stated:

"Mr. Amado Cobos manifests that he is owner of 5 hectares 8160 square meters of lot 163 of the divided lands of this municipality, which he acquired by purchase from Mr. Simon Hernandez and which lot is undivided with Sr. Dolores Cruz and the heirs of Sr. Antonio Fermin Cruz, which fraction of land he binds himself to give in lease to Lic. Schuster or whom he represents on the conditions stipulated in this instrument as soon as the subdivision of said lots has been made."

January 30, 1916, Cobos in an oil lease to the Mexican Gulf Oil Company stated:

"First. Mr. Amado Cobos covenants: That in the municipality of San Antonio Chinampa, canton of Tuxpam, state of Vera Cruz, he is owner and is in the quiet, public, and undisturbed possession of 5 hectares 8160 square meters of lot No. 163 of the divided lands of this municipality by purchase that he made of Simon Hernandez, and which lot is owned undivided with the heirs of Dolores Cruz and heirs of Antonio Fermin Cruz, and said land he binds himself to give in lease on the division being made."

October 27, 1916, Cobos undertook to give an oil lease to one Schuster, stating:

"Amado Cobos states that he is the owner of 5 hectares 8160 square meters of lot 163 of the divided lands of this municipality, which he acquired by purchase made of Simon Hernandez, and which lot is owned undivided with Dolores Cruz and heirs of Antonio Fermin Cruz, which fraction of land he obligates himself to give in lease to Attorney Schuster, or to whom he represents, as soon as may be made the division of said lot, on the conditions stipulated in this instrument."

[7] These instruments were referred to in the lease from Cobos to the Otontepec Company which is in the line of defendant's title as spread upon the public records, and it took subject to these statements. Ochoa v. Hernandez, 230 U. S. 164, 33 Sup. Ct. 1033, 57 L. Ed. 1427.

[8] In 1911 Cobos told one Anderson, who had applied to him for oil rights in the 18.9750 premises, that he could not grant them because they belonged to the heirs of Fermin Cruz. There is other evidence, but the foregoing satisfies me that Cobos did execute and deliver the deed to Fermin Cruz.

[9, 10] The degree of proof to establish a lost deed depends upon the circumstances. This was not a lost but a stolen deed. The consideration and the premises appear from the receipt of Cobos and his many admissions, written and oral. The certificate of the justice of the peace creates the presumption that the deed was executed before two known witnesses as required by law.

Article 2761 of the Civil Code of Vera Cruz provides:

"The sale of an immovable the value of which does not exceed 200 pesos can be made in a private instrument which the vendor and purchaser shall sign before two known witnesses."

[11] Under the circumstances of the case, the plaintiffs cannot be deprived of their rights because they are unable to state the names of the witnesses, who lived in a foreign country and who may very well now be dead. 22 C. J. 938 et seq.

Perez, chief of lands and legal department of the International Petroleum Company, wrote to Sadler, president of the defendant, as follows:

"Tampico, January 3, 1918.

"Mr. E. J. Sadler, Gomez Building, City. Dear Sir: In view of the conversation which you had with me some days ago, relative to the company you represent intending to commence drilling on the south part of lot No. 163 of the division of Chinampa, Tuxpam, I find myself obliged to bring to your knowledge the following:

"Upon the south part of said lot the company which I represent has rights acquired since the year 1912, from the sole, legitimate and true owners of said land, and consequently it is not disposed to consent to the doing of acts which may injure its rights.

"You cannot allege other rights in the said land than those which may proceed from Amado Cobos, who was the owner until the year 1901 when he voluntarily and legally transferred them to Antonio Fermin Cruz. Subsequently, as I have stated to you personally, and as is better known to your lawyer Claudio Buckley, to whom our lawyer has shown the documents relating thereto. Amado Cobos retook from their legitimate owner the corresponding documents, which to date he has not returned, trying perhaps to conceal them in order to declare himself sole owner of the said property.

"I am not making a false imputation against Mr. Cobos; you may come at your pleasure to this office with him and I shall take pleasure in seeing him— Cobos, justify his attitude.

"The sole object of this letter is to try to prevent you through error from committing an undue act.

"Very truly yours,    A. R. P."

The explanation which Cobos offers of his receipt, correspondence, and admissions, written and oral, is wholly unsatisfactory. It is to the effect that because 38 pesos, the balance of the purchase price payable in December, 1901, had not been paid by Fermin Cruz or by his heirs, no deed to him was ever executed or delivered. Still, in a conscientious spirit, he wrote and spoke and acted as he did on the theory that, if the balance of the purchase price due—$19 in American money —should be subsequently paid, he would execute and deliver the deed.

When, however, vast quantities of oil in the neighborhood of these premises were discovered, he made a contract dated May 13, 1918, with the heirs of Fermin Cruz conveying to them one-half of the 18.9750 hectares, paying them a large sum of money in addition; they, on the other hand, admitting, in the face of their detailed statements to the contrary in their lease to the International Petroleum Company, that neither they nor their father, Fermin Cruz, ever had any ownership of the premises.

[12] 2. The defendant next objects that, even if such a deed had been executed and delivered by Cobos to Fermin Cruz, it would not affect its rights because it was not registered. It relies for this upon the following articles of the Civil Code of Vera Cruz:

"Art. 3057. All contracts and acts inter vivos which transfer or affect the ownership, possession or enjoyment of immovable property or of real rights imposed thereon, must be recorded."

"Art. 3081. Registrations are not extinguished as to third parties except by cancellation or by the record of a transfer of the ownership or of the real right made in favor of another person."

But these articles must be read in connection with the following:

"Art. 3056. Acts and contracts which under the law must be recorded, shall not produce effect against a third party, unless they are recorded in the respective office."

"Art. 3058. Whenever the properties or rights do not exceed 200 pesos registration shall not be obligatory."

Read together, it seems to me perfectly plain that, though these private deeds need not be recorded to "produce effect against a third party," they still may be recorded if the parties in interest wish it.

Originally, both at common law and by the civil law there was no requirement that deeds be recorded. The law of caveat emptor applied, purchasers taking the risk of prior deeds of which they had neither knowledge nor notice. But the original Civil Code of Vera Cruz, known as the Corona Code of 1868, provided as follows:

"Art. 2338. All acts between the living of change or transfer of ownership of immovable things, such as donation, sale, barter, partition, transaction or any other shall be registered in the public registry."

By amendment in 1871 grants of property not worth more than 200 pesos could be executed by a private deed before a justice of the peace with two witnesses.

By amendment in 1885 it was provided that registration should not be obligatory in case of deeds for property worth not more than 100 pesos.

By the Civil Code of 1897, which applies to the case in hand, article 3058, supra, registration was not obligatory of deeds for property not worth more than 200 pesos.

"Art. 2764. The sale of real estate shall not produce effect with regard to third parties, until after it has been recorded in such cases and terms as are prescribed in this Code."

The purpose of the legislators by this amendment as to private deeds was to relieve poor people, mostly ignorant Indians, from the neces-

sity of examining public records; of having cancellations made of prior deeds; and of the duty of paying recording fees in public offices, often far away from their homes, in case of these trifling transfers of land worth less than $100 American money. This is the view taken by the Mexican lawyers examined by the plaintiffs; whereas, those called by the defendant say that, in order to "produce effect against third parties," these private deeds must also be registered.

The exception does, as the defendant claims, impair the registration system in the sense that it would be more complete and harmonious without the exception. But the question is one of public policy for the legislators and not for the courts to decide. The similar exception of deeds for property worth not more than 500 pesos was contained in the Federal Code of Mexico of 1870, and it is quite significant that in 1884 that exception was abolished, as was the similar exception in the Civil Code of Vera Cruz which we are considering in 1920; all deeds irrespective of the value of the property being required to be registered "to produce effect against third parties."

I am convinced by the plaintiffs' expert witnesses that articles 3057 and 3081, supra, upon which the defendant relies, apply only to deeds which were required by law to be registered and must be read in connection with article 3058, with the result that the deed to Fermin Cruz, being expressly exempted from the duty of registration, was good against all the world.

It is suggested that permission to record deeds of property worth not more than 200 pesos is useless upon the foregoing theory. Evidently registration would protect the purchaser in the case of the loss or the destruction of his deed or of the abstraction of his deed, as in this instance by Cobos. It seems to me, on the other hand, that, if the exception does not make such deeds effective without registration, there is no explanation of its adoption. Although the heirs of Fermin Cruz could have taken various steps against Cobos to get their title on record, which the defendant points out, they were not obliged to, as it was good without registration against third parties.

3. I might stop here on this fundamental issue of the case, but the plaintiffs go further and say that, if the deed from Cobos to Fermin Cruz was not in itself notice to all the world, still the defendant and those under whom it claims had such notice as was equivalent to registration. They were certainly advised before the Otontepec Company purchased its oil rights from Cobos of the International Petroleum Company's claim and that the heirs of Fermin Cruz asserted that the deed in question from Cobos to Fermin Cruz had been executed, delivered, and fraudulently suppressed by Cobos; they also saw the receipt of Cobos dated June 9, 1900, and his correspondence with Fermin Cruz in 1909 and receipts for taxes on the premises paid by Fermin Cruz. But defendant says that neither knowledge nor notice is enough by the law of Vera Cruz; that a purchaser of real estate, even though told by his grantor that he had previously conveyed the same premises to another person, and even though that person showed the purchaser the deed, still, if the public record showed title in his grantor, the purchaser would take good title to the premises entirely unaf-

fected by knowledge of those facts. This is certainly going the whole length; logical, but shocking.

[13] The defendant claims that its title was good if it was itself guilty of no fraud and had not participated in the fraud of Cobos, if he committed any. It relies upon cases of title by prescription under adverse claim accompanied by open, notorious, and continuous possession. Foulke v. Bond, 41 N. J. Law, 527; Woodward v. Blanchard, 16 Ill. 425; Wright v. Mattison, 18 How. 50, 15 L. Ed. 280; Davis v. Hall, 92 Ill. 85. These cases present an entirely different situation. The conditions upon which adverse possession of real estate may ripen into title depend upon the provisions of the statute of limitation creating such title. Generally speaking, an adverse holder under such statutes is not affected by knowledge or notice of a superior title. Their very purpose is to extinguish superior titles by adverse possession, unaccompanied by fraud, for a fixed period. But the defendant is not claiming under any statute of limitation or prescription.

[14, 15] On the other hand, title by grant taken with knowledge of defects or with notice sufficient to require the purchaser to make reasonable inquiry is not good except where a statute makes recording the deed the exclusive test of notice, which intention should be expressly and unmistakably stated. There is nothing said in the articles of the Civil Code of Vera Cruz concerning registration about the good faith of third parties. But I think this is to be implied. The experts called by the plaintiffs testify that this is the proper construction of the Mexican law, and there is authority both of text-writers and of decisions to the same effect. Admitting that neither the Otontepec Company nor John Kee nor the defendant was guilty of fraud or of participation in the fraud of Cobos, I think it is still plain that each of them had such knowledge and notice before taking their leases of Fermin Cruz's claim and of the fraud of Cobos as to deprive them of the protection of article 3081. Mere advice of counsel, especially of the counsel of the Otontepec Company, who had advised the buying of the same right from Cobos, that he did not think the deed in question could ever be proved or produced and that the title was merchantable, does not seem to me to be enough.

[16] 4. The defendant relies on the provisions of the Civil Code of Vera Cruz as to possession of the oil:

"Art. 809. Possession is the holding of a thing or the enjoyment of a right by ourselves or by another in our name."

"Art. 817. He is a possessor in good faith who has, or has good ground for believing that he has, a title sufficient to transfer ownership."

"Art. 818. He who is ignorant of the vices of his title is also a possessor in good faith. Ignorance is presumed in this case."

"Art. 819. He is a possessor in bad faith who possesses knowing that he has no title; as also he who without good ground believes that he has a title; and he who knows that his title is insufficient or defective."

"Art. 821. The possessor in good faith is entitled to the fruits gathered so long as his good faith is not interrupted."

For the reasons heretofore stated in respect to the title of Fermin Cruz, the defendant cannot be regarded as a holder of the oil in good faith as defined in these articles. Article 843 provides:

"Art. 843. Possession is likewise lost when another possesses the thing for more than a year reckoned from the day on which the new possession publicly began, or from the day on which it came to the knowledge of the person who formerly had possession, if the new possession began secretly."

But the defendant did not possess the oil for more than a year because it disposed of the same shortly after it was brought to the surface, production beginning January 23, 1919, and ending February 9, 1920, less than 13 months; the well being then exhausted.

[17-19] 5. It is objected that the International Petroleum Company has no interest in the oil rights involved, having assigned all its rights and privileges under the lease to its coplaintiff, the Mexican Gulf Oil Company. This is an objection on the ground of misjoinder of parties appearing on the face of the complaint and, not having been taken by demurrer, was waived by the answer. New York Code Civ. Proc. § 499. Moreover, by section 446 all persons having an interest in the subject of the action and in obtaining the judgment demanded may be joined as plaintiffs. The International Petroleum Company has an interest in securing the royalty reserved to it under the lease assigned to the Mexican Gulf Oil Company which it might desire to cover in the judgment. At all events, the defendant is in no respect prejudiced by the joinder and cannot now be permitted to take advantage of the objection.

[20] 6. Lot No. 163 was certainly held undividedly as tenants in common, first by Simon Hernandez and Dolores Cruz; then by Dolores Cruz and Cobos; and then by Cobos, Dolores Cruz and Fermin Cruz. It is also true under the law of Vera Cruz that a tenant in common cannot convey his share of the undivided property without giving his co-owners notice, so that they may make use of their preferential right to purchase.

"Art. 2683. Co-owners of an undivided property cannot sell to third parties their respective parts if a co-owner wishes to make use of the preferential right to purchase. For this purpose the co-owner who alienates shall notify all other co-owners by notarial or judicial notice, of the sale he has agreed upon, so that within eight days following they may make use of their said preferential right. On the expiration of such eight days, this right is lost by the mere lapse of the time. Until such notification is made the sale shall not produce any legal effect."

[21] But the fact is that there had been an actual division of lot 163 between Dolores Cruz and Cobos by the cutting of brechas through the timber and underbrush whereby 18.5122 hectares were set apart in the northern part of the lot to Dolores Cruz and 5.8160 hectares in the southeastern corner of the lot (described in the testimony as the "toe of the boot") to Cobos. This necessarily left 18.9750 hectares to the other tenant in common, whether he was Cobos or Fermin Cruz. Thus between the co-owners the premises were divided. No tenant in common is complaining that he has been prejudiced in connection with his preferential right to purchase. The heirs of Dolores Cruz are not complaining nor the heirs of Fermin Cruz, nor is Cobos, who could not complain, if he would, because of his fraud.

Article 1526 of the Civil Code of Vera Cruz provides:

"Ratification of, or voluntary compliance with, an obligation that is null for lack of form or solemnity, at whatever time had, extinguish the right to sue for nullity, except in those cases where the law expressly provides the contrary."

At all events, December 27, 1916, a notarial division of lot 163 was made whereby the heirs of Dolores Cruz were given the 18.5122 hectares which had been set apart for him in the northern part of the lot, and the rest of the lot was given to Cobos, which is a confirmation of the title of the real owner of the premises in question, whom I have found to be Fermin Cruz and his heirs. It is like the case of a grantor subsequently getting title to the land which he had previously conveyed to a third party without title.

7. Exception has been taken to instruments executed by or on behalf of various of the heirs of Fermin Cruz and by the administrator of the estate ratifying the oil lease of August 23, 1912. While I think these instruments do relate, they are not necessary to the plaintiffs' title. Fermin Cruz had no title to the oil in the subsoil because of its fugacious nature. His heirs being tenants in common of the premises, any one of them by the law of Vera Cruz could raise or grant to others the right to raise the oil to the surface, as I have found in answer to the defendant's 106th, 107th, and 108th requests for findings of law to that effect. Title to the land itself as between the tenants in common is in no wise affected.

Finally, by deed executed between the heirs of Fermin Cruz and Cobos May 13, 1918, the former admitted that Cobos was the owner of 18.9750 hectares and he conveyed the west half thereof to them, keeping the east half himself. The defendant began to drill this well in question May 26, 1918, on the east half, so that the heirs of Fermin Cruz have no claim whatever to any part of the oil produced by it which is here in question.

8. It is quite true that the grant of oil rights to the International Petroleum Company and from it to the Mexican Gulf Oil Company, being each for property worth more than 200 pesos, should have been registered. But they could not be registered because it was impossible to produce the deed from Cobos to Fermin Cruz. Therefore the recorder properly made a provisional registration in accordance with article 3073 of the Civil Code of Vera Cruz, which reads:

"If the recorder does not find the title deed to be legally sufficient, he shall so inform the interested party and shall require judicial decision as to its sufficiency, but he shall make a provisional registration which will be legally effective, if the defect in the title deed be remedied within sixty days."

The defendant and those under whom it claims had notice of these leases equal to registration. The declarations of Cobos, either oral or written, as to real property, are evidence to show that he did execute the deed to Fermin Cruz and, being against his interest, are strong proof that the declarations were true. 22 C. J. 356. Whether they were notice to defendant and those under whom it claims depends upon whether it or any of them had actual knowledge of his declarations or had constructive notice of it. I have found they had.

[22] 9. Nothing that Cobos or the heirs of Fermin Cruz said or did

281 F.—11

to the prejudice of the plaintiffs' title after April 20, 1901, can affect it in any way. So the two interdicto proceedings, although promoted and paid for by the plaintiffs, one begun by the estate of Fermin Cruz, being a complaint against the Transcontinental Company in relation to obra nueva on March 14, 1918, and the other a complaint against the Transcontinental Company and Cobos asking retener la posesion, by the administrator of the estaté of Fermin Cruz, begun April 21, 1919, only show that the heirs had not at the time of the first such a possession, and the administrator of the estate had not at the time of the second, proved such an injury as would jusify granting the orders prayed for. Such orders seem to me like our preliminary injunctions maintaining the status quo temporarily without in any way deciding the merits and not conclusive either as to ownership or as to the right of possession as distinguished from the actual possession.

Chapter 4, tit. 2, book 2, of the Code of Civil Procedure of Vera Cruz, on interdicts, provides:

"Art. 1137. Summary suits having for their purpose to acquire, retain or recover the temporary possession of a thing, to suspend the execution of a new work, or in which measures are taken to the end of avoiding damage, as respects something that threatens ruin or something that involves danger, are called interdicts.

"Art. 1138. Interdicts only lie as respects real property and real rights, created thereon."

"Art. 1140. Interdicts do not deal with questions of ownership.

"Art. 1141. Interdicts cannot be consolidated with a suit over ownership, and shall be decided previously.

"Art. 1142. One who has been defeated in a suit over ownership or in a plenary suit for possession cannot make use of interdicts respecting the same thing.

"Art. 1143. One who is defeated in any interdict can make use later of the plenary suit for possession or suit for the ownership," etc.

"Art. 1144. In no interdict shall evidence as to the ownership be admitted, but only evidence that relates to the fact of possession."

"Art. 1147. One who possesses a thing by precarious title cannot make use of the interdict of new work.

"Art. 1148. Any title which without being translative of ownership, only confers the simple holding or material possession of a thing in the name of another person, is called precarious for the effects of the preceding article."

[23] 10. The further objection is made that the deed, if executed, was invalid because, Cobos being married when he bought the premises, they constituted community property and could not be conveyed by him without his wife joining.

Articles 1876 and 1878 of the Civil Code of Vera Cruz read as follows:

"Art. 1876. The ownership and possession of common property belongs to both spouses so long as the partnership subsists."

"Art. 1878. Real estate belonging to the partnership fund cannot be obligated nor alienated in any manner by the husband without consent of the wife."

The premises were bought by Cobos February 20, 1895, after, as ' says, his ecclesiastical marriage in 1892, but before his civil marri March 18, 1895, and I think that he had a right to convey them wi. out his wife joining in the deed. The Civil Code of Vera Cruz, title I v of the Acts of Civil Status, art. 43, provides:

"The civil status of persons may only be proved by the corresponding records of the civil registry.

"No other document nor means of proof is admissible to prove civil status, except in the following cases: (1) When no registries have existed or they have been lost or destroyed or effaced or the folios are missing in which it might be supposed the record existed; but if only one of the registries has been rendered useless and a duplicate exists, proof shall be taken from the latter, and no other class of evidence shall be admitted."

The Mexican lawyers were not examined on this point, but this seems to me to provide the only legal evidence of marriage, and the certificate of the civil marriage described the parties as being unmarried.

11. The defendant next relies upon a pure donation by the heirs of Fermin Cruz to Ramon Diaz dated October 11, 1910, by which, in recognition of his good services, they conveyed to him all their rights in the subsoil of 18.9750 hectares of lot 163. The evidence satisfies me that Diaz was acting for and on behalf of the International Petroleum Company when this donation was made, that he got it for the company's benefit, and could never assert title in himself as against it.

[24] 12. It is said that the plaintiffs cannot recover under the first count for the value of the oil brought to the surface by the defendant and cases are cited to the effect that the only remedy of an owner of land out of possession against one in open, continuous, and notorious adverse possession under a claim of title is an action of ejectment with a claim for mesne profits. But the defendant was not in possession under any claim of title to the premises. All it had was a possessio pedis not adverse to but in strict acknowledgment of the owner's title. The owner of the land, whether Cobos or the heirs of Fermin Cruz, was in possession and not disseized. The defendant made no claim to the land. Raising oil to the surface did not constitute a claim of ownership of the land. Neither it nor the plaintiffs, both being mere licensees, had any possession or right of possession which would sustain an action of ejectment. The oil when brought to the surface became personalty. The owner of the land could recover its value without being put to an action of ejectment (Stone v. United States, 167 U. S. 182, 17 Sup. Ct. 778, 42 L. Ed. 127), there being no claim of title by adverse possession, and his grantee of the exclusive right to explore for oil could do the same.

[25] If the plaintiffs have no right to recover the value of the oil, they cannot recover at all for an obvious injury which they have sustained at the hands of the defendant. They cannot maintain an action of ejectment against it, and, there being no ground for injunction, they cannot get relief against it in equity. I think that, having the exclusive right to explore for oil on the premises, oil brought to the surface in violation of that right became theirs and they could claim it, or its value, if disposed of, in an action at law, or could require the interloper to account for his profits, or, if he made none then for the damages sustained by them, in a suit in equity for an injunction. The right of possession of the oil is tantamount to possession and entitles him to it who has the exclusive right to explore. Union Petroleum Co. v. Bliven, 72 Pa. 173. Otherwise one without right to the oil could go off with it scot-free.

[26] The argument of the defendant is that oil being a fugacious element is not owned by any one until it is brought to the surface; the owner of the land does not own it if he has given the exclusive right to explore to another; that other cannot recover if he was not in possession of it. Such a result seems to me so unjust as to make the reasoning which leads to it wrong. The intention of section 3339 of the New York Code of Civil Procedure, providing for only one form for civil action, is that any one who has a right can recover for an infraction of his right without regard to the technicalities which distinguish the forms of actions at common law. Radway v. Duffy, 79 App. Div. 116, 80 N. Y. Supp. 334.

[27] 13. Whether the plaintiffs can recover under the second count for the defendant's interference with their incorporeal hereditament or profit à prendre is more doubtful. That is an interest in land in a foreign country, and it may be said that such a right is local and not transitory; but the state of New York has by section 982-a of the Code of Civil Procedure (chapter 76, Laws of 1913) made actions for injuries to real property outside of the state transitory, and it was so construed in Jacobus v. Colgate, 217 N. Y. 235, 111 N. E. 837, Ann. Cas. 1917E, 369. It reads:

"An action may be maintained in the courts of this state to recover damages for injuries to real estate situate without the state, or for breach of contracts or of covenants relating thereto, whenever such an action could be maintained in relation to personal property without the state. The action must be tried in the county in which the parties or some one thereof resides, or if no party resides within the state, in any county."

Doubtless no country would recognize or enforce a judgment of the court of another country operating directly on its real property. But the action under the second count involves land in Mexico only incidentally. The judgment between the competing licensees will depend upon the titles of Cobos and of the heirs of Fermin Cruz respectively, but neither of them will be affected by it. Indeed, they have arrived at complete peace by dividing the premises in question between them under the deed of May 13, 1918.

The question of the jurisdiction of English courts over real property in foreign countries was elaborately considered in the case of Companhia de Mocambique et al. v. British South Africa Company, App. Cas. (1893) 602. It is quite true that Lord Esher in the lower court took the view that, because of the rules of international law in respect to the comity between sovereigns, no nation could assume jurisdiction of local actions concerning land in another country. But in the House of Lords Lord Herschell plainly doubted this view, saying at page 624:

"The question what jurisdiction can be exercised by the courts of any country according to its municipal law cannot, I think, be conclusively determined by a reference to principles of international law. No nation can execute its judgments, whether against persons or movables or real property, in the country of another. On the other hand, if the courts of a country were to claim, as against a person resident there, jurisdiction to adjudicate upon the title to land in a foreign country, and to enforce its adjudication in personam, it is by no means certain that any rule of international law would be violated. But in considering what jurisdiction our courts possess, and have claimed to exercise in relation to matters arising out of the coun-

try, the principles which have found general acceptance amongst civilized nations as defining the limits of jurisdiction are of great weight."

Jurisdiction was ultimately denied, not because of a misgiving as to the right of Parliament to declare it, but because the rule of court under the Judicature Act of 1873 as to venue which was the subject of consideration was held not to extend the jurisdiction of the court at all. This certainly cannot be said of the provision of section 982-a of our Code of Civil Procedure. However, the plaintiffs concede that a court cannot adjudicate a claim directly against land in a foreign country, contending only that it may adjudicate a case where title to such land is incidentally in doubt. I need not pursue this inquiry because they have offered no proper proof to show to what extent their profit à prendre was injured by the defendant. That the value of the oil is not the measure may be seen from the opinions in Providence Co. v. Nicholson, 178 Fed. 29, 101 C. C. A. 157; Duffield v. Rosenzweig, 144 Pa. 520, 23 Atl. 4; Baker v. Hart, 123 N. Y. 471, 25 N. E. 948, 12 L. R. A. 60.

[28] 14. The plaintiffs are entitled to compensation only, and not to punitive damages nor to the increased value of the oil in the defendant's hands. I find that the value of the oil when raised to the surface was 25 cents a barrel, and judgment will be entered for the plaintiffs for 6,064,060.46 barrels at that rate, less the cost of raising, together with 6 per cent. interest from December 15, 1919, the date of suit brought, and costs.

This case, full of perplexities of law and of fact, has been prepared with extraordinary care and presented with great ability by all the counsel engaged. About many of these questions, especially of Mexican law, I cannot be confident. The defendant has submitted to me 127 requests for findings of law, and I have passed on them all, though many of them seem to me to have no bearing on the real issues. I have also passed upon all objections to testimony taken by deposition and to exhibits then offered in evidence, and have allowed exceptions in every instance of objections overruled and of findings of law refused or modified.