**MERINOS VIESCA Y COMPANIA, Inc., v. PAN AMERICAN PETROLEUM & TRANSPORT CO. et al.**

No. 2839.

District Court, E. D. New York.

April 22, 1931.

See also (D. C.) 40 F.(2d) 928.

Pleasants & Lowry, of New York City (Samuel A. Pleasants, of New York City, of counsel), for plaintiff.

Kellogg, Emery & Inness-Brown, of New York City (Dean Emery and J. Fearon Brown, both of New York City, of counsel), for defendants.

GALSTON, District Judge.

On the pleadings the defendants have moved for judgment dismissing the complaint pursuant to rule 112 of the Rules of Civil Practice, and on the further ground that this court is forum non conveniens.

Senora Cruz, the owner of certain lands in Mexico, in the State of Vera Cruz, on June 21, 1902, executed and delivered to one Adolfo Merinos a power of attorney concerning the leasing of the lands.

The complaint alleges that under the laws of Mexico this power of attorney is a general power and gave Merinos no authority to sell property, either real or personal, or to confer title to the rights to the subsoil or to the products thereon.

Subsequent to the making of this power of attorney, Merinos executed and delivered to the Pan American Company a lease covering these premises, for a period of thirty years beginning on July 1, 1906. By this instrument Merinos undertook to grant to the Pan American Company a license to mine, drill, explore, exploit, extract, and export the crude oil and analogous substances such as petroleum, gas, etc., which might be found on the surface or in the subsoil. It is then alleged that this license from Merinos to the Pan American Company, so far as it attempted to confer upon that defendant the privilege of exploiting and removing the subsoil and extracting the petroleum products, was by virtue of certain sections of the Codes of Mexico and Vera Cruz null and void.

It is alleged that the Pan American Company, at the time of the execution of the Merinos lease, had full knowledge of the limitations of the authority of Merinos under the power of attorney granted to him by Senora Cruz; that subsequently on July 20, 1907, this company assigned to the defendant Tamiahua Petroleum Company its rights under the lease, and that the Tamiahua Petroleum Company also had knowledge of the limited authority of Merinos under the alleged general power of attorney from Senora Cruz, and of the laws of the State of Vera

Cruz and of the United States of Mexico in respect to powers and leases of lands.

It is then alleged that in violation of the rights of Senora Cruz, and without her written consent, the Tamiahua Petroleum Company drilled and mined the subsoil and removed and exported oil therefrom to the extent of approximately one hundred and twenty-two million barrels.

Senora Cruz remained the owner of the property up to the time of her death on December 2, 1919, leaving a will under which her natural son, Geronimo Merinos, was made her sole and "universal heir," as well as the executor of her estate; thereafter there was a meeting of the heirs of Senora Cruz on September 6, 1920, pursuant to the laws of Mexico, relating to the distribution of real and personal property, and at that meeting Geronimo Merinos was declared to be the sole and universal heir of Senora Cruz. Thus ownership in the aforesaid lands is alleged to have been in Geronimo Merinos from December 2, 1919, to March 18, 1921, at which time he elected to terminate the aforesaid lease and to recover damages sustained to the premises by reason of alleged wrongful exploitation of the subsoil and the sale of the products extracted therefrom.

It is alleged that the value of the products thus removed, between July 20, 1907, and March 18, 1921, was $97,600,000.

On November 11, 1922, Geronimo Merinos assigned his claim against the defendants to a partnership known as Merinos Viesca y Compania. On December 29, 1925, that firm assigned its claim against the defendants to the plaintiff herein.

The first four causes of the complaint would seem to seek to recover damages for an alleged anticipatory breach of the lease; the fifth cause of action is for an alleged conversion but based upon contentions in respect to the infirmity of the Merinos power of attorney and the limitations of said lease to the Pan American Company.

The answer consists of a general denial and of fourteen separate defenses. The first four defenses relate to various statutes of limitation in New York, Vera Cruz, Delaware, and Maine.

The fifth defense incorporates a copy of the power of attorney executed June 21, 1902, by Senora Cruz in favor of her son, Adolfo Merinos, and also a copy of the lease from Senora Cruz (acting by Adolfo Merinos, her attorney in fact) to the Pan American Company; and also alleges that Senora Cruz and her heirs had full knowledge of the acts of the Tamiahua Petroleum Company concerning the extraction of petroleum from the leased premises and from oil wells drilled thereon, and knowledge also of the construction upon said premises, at great expense to the lessee, of roads, highways, tanks, pumping stations, machinery, communication lines, etc.; that the defendant at all times paid the rent called for in the lease; that Senora Cruz and her successors accepted such rent with full knowledge that the defendant was extracting petroleum from the subsoil of the leased lands, and that no attempt was made during this period by the lessor, or any one purporting to succeed to her interests, to repudiate the lease because of any alleged unlawful acts of the lessee, until March 18, 1921, when Geronimo Merinos elected to terminate the lease on the grounds heretofore stated. This defense is, therefore, one of ratification.

The sixth defense sets forth a ratification by Senora Cruz in the form of a public document executed August 21, 1917.

The seventh defense alleges also ratification, this by a document executed by Geronimo Merinos on April 28, 1924.

The eighth defense alleges an estoppel arising out of the failure of Senora Cruz, or any of her successors, to protest full knowledge on the part of Adolfo Merinos, her attorney in fact, of the alleged unlawful acts of the defendants or any of them.

The ninth defense is one of estoppel arising out of the failure by the plaintiff or its assignors to return the rent or make any offer of restitution.

The tenth defense has to do with res adjudicata arising out of the adoption in the Republic of Mexico of the Constitution of 1917, and the enactment in pursuance thereof by the Mexican Federal Congress of a law concerning petroleum. In accordance with this Constitution and the Petroleum Law, the defendant Tamiahua Petroleum Company filed with the Secretary of Industry of the Department of Commerce and Labor, its application for a confirmatory concession upon Lot 165 Chinampa. The aforesaid Department is alleged to have found the application and the confirmatory concession of the defendant to be in all respects good and valid, with full knowledge on the part of and notice to all persons claiming ownership or rights in said lot; and that neither the plaintiff nor any of its alleged predecessors in title made application for a confirmatory concession in respect to lot 165, nor did they

oppose the application of the defendant Tamiahua Petroleum Company.

The eleventh defense alleges that the rights of the parties to this action are governed by foreign law and that by reason of the circumstances this court should decline to take jurisdiction of the action.

The twelfth defense is one of res adjudicata based on an action instituted in Mexico against the defendant Tamiahua Petroleum Company, for the recovery of the subsoil and for the restitution of the value of the petroleum and similar substances which may have been extracted by the defendant; that said action was based substantially upon the same allegations as those set forth in the complaint herein; that the action was determined in favor of the defendant upon appeal to the Supreme Court of the State of Tamaulipas, Mexico. Thereafter on May 3, 1924, by virtue of another proceeding brought, the revocation of the power of attorney to Viesca and Ruiz by Geronimo Merinos was confirmed, and by reason of the termination of said action in defendant's favor, the said Viesca and his associates determined to invoke the jurisdiction of the courts within the United States of America, and caused the plaintiff company to be organized under the laws of the state of New York solely for the purpose of instituting this action.

The thirteenth defense alleges a release by Geronimo Merinos of each and every alleged cause of action set forth in the complaint.

The fourteenth defense alleges a sale by Geronimo Merinos of the premises in question to a corporation known as Doheny, Bridge y Cia.

The plaintiff was by court order directed to reply to the fifth, sixth, eighth, ninth, tenth, eleventh, and twelfth of such special defenses, and in such reply makes denials and allegations which place such defenses substantially in issue.

For the purposes of this motion, the allegations of the complaint must be taken as true, Poss v. Gottlieb, 118 Misc. Rep. 318, 193 N. Y. S. 418; so also must the allegations of the reply be deemed true, Webster v. Roe, 124 Misc. Rep. 110, 207 N. Y. S. 102.

Heretofore in this cause a motion was made before Judge Inch, before issue was joined, to dismiss the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The motion was denied, and so of course must this motion, unless now, as defendants claim, the reply admits sufficient to defeat plaintiff's cause of action. The power of attorney and the lease, which underlie the entire controversy, are part of the answer.

Are there such admissions in the reply in respect to those instruments as would defeat the plaintiff? If not, the defendants cannot prevail. Lowe v. Plainfield Trust Co., 216 App. Div. 72, 215 N. Y. S. 50.

Now, primarily and essentially, to determine whether the lease in all respects is valid, the power of attorney to Adolfo Merinos must be construed. By what law is it to be construed? It was a power given in Mexico and pursuant, ostensibly, to the requirements of Mexican law, and for acts to be exercised in Mexico. It cannot be doubted that the validity and scope of this power of attorney must be determined by Mexican law. So far as this court is concerned, that law is a matter of fact to be alleged and proved. The allegations of plaintiff's pleadings leave no room to doubt that the pleader's contention is that the power was insufficient to enable the attorney in fact to make an oil lease. Such being the situation as to the pleadings, it would be venturesome on the part of this court, without the aid of proof as to foreign law, to determine the matter of validity or scope of the Merinos power of attorney.

To construe the lease of June 16, 1906, from Merinos, as attorney in fact of Senora Cruz, to the Pan American Company, the hazard would not be so great; but the validity of this instrument rests upon the authority vested in Adolfo Merinos. Thus in effect the lease cannot be construed without determination of the effect of the Merinos power of attorney.

Likewise this court is not, in view of the allegations of the reply, in position to accept the interpretation of the defendants of the instruments of August 21, 1917, and April 28, 1924, and must be aided by proof of Mexican law.

The situation presented is not unlike that referred to in Hurwitz v. Hurwitz, 216 App. Div. 362, 215 N. Y. S. 184, 187, in which it is said: "The real question in this case, as I see it is: Shall the validity of the so-called marriage agreement be disposed of upon a motion for judgment on the pleadings? I think not. It is true that the learned counsel for the appellants claims that the so-called 'Koshuba' or marriage contract is illegal and of no effect, but it seems to me that this agreement, being written in the Hebrew language, with the peculiar idioms

and characteristics of that language, cannot be properly interpreted without a trial at which the circumstances surrounding its execution and the situation of the parties may be ascertained."

Indeed, the very interesting argument presented that this court is not forum conveniens indicates the danger involved in any attempt merely on the pleadings to construe these foreign documents and the laws of Mexico in respect thereto.

As Judge Ward said in Mexican Gulf Oil Co. v. Compania Transcontinental de Petroleo, S. A. (D. C.) 281 F. 148, 165: "About many of these questions, especially of Mexican law, I cannot be confident."

The defendants urge that the practical construction of the contract given by the parties to it is conclusive against the claim of the plaintiff, and cites Jones v. Canadian National Railways Company (D. C.) 14 F.(2d) 852, 855; Barber Asphalt Co. v. St. Paul (C. C. A.) 224 F. 842, 846; Bunday v. Huntington (C. C. A.) 224 F. 847, 854; Sagamore Iron Co. v. Ash Iron Co. (C. C. A.) 24 F.(2d) 692; 694. This may be conceded and doubtless will have a very important influence in the trial of the action, but it cannot avail the defendants on this motion.

Now as to the proposition that this court is forum non conveniens:

The defendants made a similar motion before Judge Moscowitz, who denied the motion to dismiss, but without prejudice to a renewal of the motion after the joinder of issue.

Undoubtedly it abundantly appears that questions of Mexican law are involved, and that witnesses residing in Mexico may be called, and one's first reaction is, perhaps, to question the motive of the plaintiff in seeking this forum; but Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U. S. 518, 48 S. Ct. 404, 405, 72 L. Ed. 681, 57 A. L. R. 426, tends rather to limit a court's inquiry into motive. Mr. Justice Butler said: "The motives which induced the creation of respondent to become successor to its Kentucky grantor and take a transfer of its property have no influence on the validity of the transactions which are the subject of the suit. The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction. McDonald v. Smalley, 1 Pet. 620, 624, 7 L. Ed. 287."

Certainly it does not appear from the pleadings that plaintiff's claim, devolving from Senora Cruz and her successors in interest, is feigned or colorable or not actual.

The defendants have submitted an exceedingly interesting study of the doctrine of forum non conveniens, by Paxton Blair, Columbia Law Review, volume 29, No. 1; but the cases discussed in that paper are far from sustaining the proposition that this court should decline jurisdiction of the pending case. Indeed, the author writes: "Confinement of the doctrine to tort cases. In the state of New York, though not apparently elsewhere, there is a marked tendency on the part of the courts when confronted with a suit between non-residents, or suits wherein a non-resident is plaintiff and a foreign corporation is defendant, the cause of action having arisen outside the state, to apply the doctrine of forum non conveniens if the action is on tort, and to refuse to apply it if the action is on contract. The distinction seems firmly established, though its acceptance has not been preceded by any careful analysis." Pages 30, 31.

Applying the foregoing test, we find this case is not one of tort but of contract.

Again Mr. Blair writes: "Necessity of showing that some other court has jurisdiction. At the common law it was an established principle that a plea to the jurisdiction of a superior court of general jurisdiction was void unless coupled with an allegation showing that there was some court which was capable of exercising jurisdiction over the cause." Pages 32, 33.

And so again the test fails, for it does not appear from the pleadings that the Mexican courts would have jurisdiction of the plaintiff corporation.

Of all the authorities cited, that which most clearly approaches in principle the matter involved herein is Mexican Gulf Oil Co. v. Compania Transcontinental De Petroleo, S. A. (D. C.) 281 F. 148, affirmed on appeal (C. C. A.) 292 F. 846, 848. The comment made by the Circuit Court of Appeals is pertinent:

"This cause, difficult below in most of its aspects, comes here greatly simplified; this, because (1) the learned District Court has filed a comprehensive decision carefully and clearly discussing every essential question in controversy. * * *

"This and other questions of title were decided in favor of plaintiffs, after the court had heard the testimony of experts in respect of the construction and interpretation of the foreign law, and particularly of the

applicable sections of the Civil Code of Vera Cruz. * * *

"To support this conclusion, the court had before it an expert for plaintiff, T. Esquivel Obregon, a lawyer, former Minister of Finance of Mexico and now professor of Latin-American law at Columbia and New York University, and various provisions of the Vera Cruz Penal Code and Code of Penal Procedure, and the decisions of Mexican courts in Barrera v. Diaz."

I cannot see that this case presents any greater complications and difficulties than did that tried before Judge Ward.

Accordingly, the motion for judgment on the pleadings is denied. Settle order on notice.